[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16863
_____

D.C. Docket No. 1:15-cv-20444-JAL


OMAR PAEZ,

                                        Plaintiff - Appellee,


YOVANY DIAZ,
JON ANTERIO,
LYNDEAN PETERS,

                            Consolidated Plaintiffs - Appellees,


versus

CLAUDIA MULVEY,
an individual,
JOHN LOYAL,
KELLY SULLIVAN,
an individual,
ROBERT E. BREEDEN,
an individual,

                                Defendants - Appellants,


FLORIDA DEPARTMENT OF LAW ENFORCEMENT, et al.,

                                        Defendants.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

(February 8, 2019)

Before CARNES, Chief Judge, MARCUS, Circuit Judge, and ROSS,[*] District
Judge.

MARCUS, Circuit Judge:

In 2011, Sergeant Omar Paez, Sergeant Lyndean Peters, and Officer Yovany

Diaz ("the Appellees") of the Golden Beach Police Department were arrested on

various charges of public corruption.  The officers were accused of, among other

things, fraudulently failing to report off-duty police work that would have required

them to pay administrative fees to the Department.  The officers were never tried

and the criminal charges were dropped more than three years later.  They now say

the arresting officers, Detective John Loyal of the Miami-Dade Police

Department's ("MDPD") Public Corruption Investigations Bureau, and Special

Agent Claudia Mulvey of the Florida Department of Law Enforcement ("FDLE"),

as well as Loyal and Mulvey's supervisors, Sergeant Kelly Sullivan (MDPD) and

Supervisory Agent Robert Breeden (FDLE), violated their constitutional rights by

intentionally omitting exonerating information from the probable cause affidavits

---

[*] The Honorable Eleanor L. Ross, United States District Judge for the Northern District
of Georgia, sitting by designation.

2

that secured their arrest warrants.  The district court denied Loyal, Mulvey, and their supervisors ("the Appellants") the protection of qualified immunity.  But even if the omitted information had been included in the affidavits, there would still have been probable cause to believe each of the Appellees had engaged in a scheme to defraud in violation of Florida Statute § 817.034(4).  Thus, there was no constitutional error in the officers' arrests pursuant to warrants based on those affidavits, and Loyal and Mulvey, as well as their supervisors, were entitled to qualified immunity.

## I.

### A.

Appellees Paez, Peters, and Diaz were police officers in the Golden Beach Police Department ("GBPD") in the late 2000s.  MDPD Detective John Loyal and FDLE Special Agent Claudia Mulvey were assigned to investigate alleged misconduct at the GBPD.  Loyal and Mulvey jointly submitted probable cause affidavits to a judge sitting in Florida's Eleventh Judicial Circuit Court in Miami-Dade County that led to the issuance of arrest warrants for Paez, Peters, and Diaz. All three were arrested in early 2011 and subsequently released on bond.  The criminal charges against them were dropped by the State Attorney's Office and the case was dismissed in March 2014.  The issue before us now is whether those

arrests violated the Fourth Amendment because of exculpatory information left out of the warrant affidavits.

Each probable cause affidavit outlined two types of allegedly criminal behavior.  First, because Golden Beach Police Department official time logs and outside employer time logs for off-duty work showed work performed during the same hours, the affiants averred that Paez, Peters, and Diaz were paid for off-duty work while simultaneously billing hours for work performed at the GBPD.  In addition, time logs taken from some outside employers revealed off-duty work that was not recorded by the GBPD.  The Town of Golden Beach ("the Town") collected a five-dollar-per-hour administrative fee for off-duty police work to cover costs like insurance and the use of police vehicles.  Because the invoices Paez, Peters, and Diaz submitted to the GBPD for off-duty work showed fewer hours than the time records kept by their off-duty employers, the affiants said that Paez, Peters, and Diaz had avoided payment of the required administrative costs.

According to the Paez probable cause affidavit, signed by Loyal and Mulvey, Paez had worked 247.5 hours of unrecorded off-duty work, which would have required him to pay $1,237.50 in administrative fees to the Town.  The affidavit also identified two occasions on which Paez worked off-duty for private employers during the same hours he was said to have worked for the GBPD, resulting in $212.49 of apparent "double compensation" from the Department.  The

4

affidavit urged that there was probable cause to charge Paez with one count of an Organized Scheme to Defraud in violation of Florida Statute § 817.034(4)(a)(3) and one count of Grand Theft in violation of Florida Statute § 812.014(2)(c).

The Peters affidavit, also signed by Loyal and Mulvey, found that Peters engaged in 199.5 hours of unrecorded off-duty work, which would have required him to pay $997.50 in administrative fees to the Town. The affidavit also identified eleven occasions on which Peters worked off-duty for private employers during hours he was listed as having worked for the GBPD, resulting in $1,380.12 of apparent "double compensation" from the Department. The affidavit said there was probable cause to charge Peters with one count of an Organized Scheme to Defraud in violation of Florida Statute § 817.034(4)(a)(3), eleven counts of Official Misconduct in violation of Florida Statute § 838.022, one count of Grand Theft in violation of Florida Statute § 812.014, and one count of False and Fraudulent Insurance Claims in violation of Florida Statute § 817.234.[1]

---

[1] This count related only to Peters and was not connected in any way to the other fraud and official misconduct charges. The affidavit averred that Peters had committed insurance fraud by submitting a $6,100 insurance claim for replacement of a police canine. Sergeant Peters had been rear-ended by a drunk driver and submitted claims to the driver's insurance company for Peters' personal injury in the amount of $10,000, and for $10,000 in property damage on behalf of the Town, which included $3,900 in damages to a police vehicle and $6,100 for the replacement of the police canine he said had to be retired due to injuries sustained in the accident. The affidavit claimed that, according to veterinary records, the canine had "exhibited some soreness" but had not "sustain[ed] any injuries" in the accident that led to the insurance claim. Instead, the treating veterinarian had previously diagnosed a spinal condition and had recommended restricted duty or retirement for the canine before the car accident.

Finally, the Diaz affidavit, also signed by Loyal and Mulvey, identified 344 hours of unrecorded off-duty work, which would have required the payment of $1,720 in administrative fees to the Town. The affidavit also identified five dates on which Diaz worked off-duty for private employers during hours he was listed as having worked for the GBPD, resulting in $312.00 of apparent "double compensation" from the Department. The affidavit claimed that there was probable cause to charge Diaz with one count of an Organized Scheme to Defraud in violation of Florida Statute § 817.034(4)(a)(3), two counts of Official Misconduct in violation of Florida Statute § 838.022, and one count of Grand Theft in violation of Florida Statute § 812.014(2)(c).

### B.

After the criminal charges against them were dropped by the State Attorney, Paez, Peters, and Diaz sued Loyal, Mulvey, Breeden, Sullivan, Miami-Dade County, the FDLE, and the Town of Golden Beach in Florida's Eleventh Judicial Circuit.[2] The lawsuits were promptly removed to the United States District Court

---

The civil rights complaint alleged that based on veterinary records and the accident report available to Mulvey and Loyal during their investigation, it was clear the dog had been injured in the accident and that Peters had received no personal monetary benefit from the insurance payout. Because we find there was probable cause to believe Peters engaged in an organized scheme to defraud, we need not address whether there was probable cause to believe Peters had engaged in insurance fraud as well. See infra at 13–14.

[2] The district court dismissed the claims against FDLE and Miami-Dade County, and Plaintiffs withdrew their claim against the Town. Those claims are not relevant to this appeal.

6

for the Southern District of Florida, where they were consolidated and transferred to a single district judge.  Each of the Appellees brought six claims relevant to this appeal: four § 1983 claims alleging that each of the four Appellants violated their Fourth Amendment rights by initiating a malicious prosecution, as well as state common law malicious prosecution claims against Loyal and Sullivan.

In relevant part, the complaint urged that the affidavits submitted by Mulvey and Loyal should have included additional -- and importantly, exonerating -- information known to the affiants.  This information, the complaint said, would have revealed that their conduct was not criminal.  As for the unpaid administrative fees, the complaint alleged that the GBPD "had no authority" to charge the fees to the officers.  In addition, the Appellees "had paid, and in fact had actually overpaid, the claimed administrative fees."  Meanwhile, the claimed incidents of overlapping on-duty and off-duty work, the complaint further alleged, represented the practice of using "flex time" to avoid overtime billing, a practice "well known to, and condoned by" the GBPD.  That is, while the records of hours worked at the GBPD did not reflect the actual hours worked, the Department allowed its law enforcement officers to engage in this practice.

The complaint also asserted that Mulvey and Loyal knew that the officers' conduct was not criminal or improper.  It referenced five relevant pieces of omitted evidence:

7

[D]uring the investigation, Mulvey and Loyal: (1) were given a copy of the [Collective Bargaining Agreement for the GBPD], that clearly and by its express terms, did not authorize Golden Beach to charge its police officers the administrative fees but only authorized the off-duty employers to be charged; (2) secured witness statements from Golden Beach Chief Skinner that part-time police officers such as . . . for part of the covered period Diaz, were not covered by the CBA and its administrative fee policy; (3) chose to ignore undisputed evidence that Plaintiffs Paez, Peters, and Diaz had fully paid -- and had even overpaid -- the claimed administrative fees; (4) secured a sworn statement by Golden Beach Town Manager A. Diaz that Golden Beach officers regularly paid the fees late and Golden Beach would accept those late payments; [and] (5) were provided with sworn statements of [Police Chief] Skinner in 2010 and Golden Beach Police Captain Joseph Barasoain ("Barasoain") in 2011 that discussed the "flex time" policy and were thus informed about the "flex time" practice as justification for the alleged double reporting of off-duty and on-duty work hours . . . .

The complaint said that since Mulvey and Loyal knew these facts, their affidavits contained knowingly false and misleading statements and omitted substantial exculpatory evidence.

The complaint urged that Mulvey's supervisor (Breeden) and Loyal's supervisor (Sullivan) also were liable for the misrepresentations made by officers Mulvey and Loyal. Breeden and Sullivan allegedly knew about the exculpatory evidence and also knew there was no probable cause to believe any crimes had been committed. Yet, they wrongfully approved the arrest warrant affidavits. The complaint added that Breeden and Sullivan were made aware of the contradictory facts by Mulvey and Loyal, and from their review of the investigative reports and all of the evidence and testimony that had been compiled.

8

The Appellants jointly moved the district court to dismiss all of the claims, arguing that there was no wrongful arrest and no malicious prosecution, and thus that they were entitled to qualified immunity. The district court granted the motion in part and denied it in part. It rejected the motion to dismiss the § 1983 malicious prosecution claims and the state common law malicious prosecution claims leveled against Mulvey and Loyal. The trial court concluded that the complaint plausibly alleged that Mulvey and Loyal intentionally or recklessly made material omissions in their probable cause affidavits and that the inclusion of the omitted information would have negated any finding of probable cause. Thus, Mulvey and Loyal were not entitled to qualified immunity.

As for the § 1983 supervisory liability claims, the district court dismissed Paez and Diaz's § 1983 claims against Breeden because Breeden was no longer Mulvey's supervisor at the time the relevant affidavits were submitted. However, the court denied the motion to dismiss all three § 1983 supervisory liability claims against Sullivan and Peters' § 1983 supervisory liability claim against Breeden; like Mulvey and Loyal, the supervisors were not entitled to qualified immunity.

Mulvey, Breeden, Loyal, and Sullivan timely filed this interlocutory appeal.

## II.

"We review <u>de novo</u> a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss, accepting the factual allegations in

9

the complaint as true and drawing all reasonable inferences in the [nonmoving party's] favor." Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003).

## A.

Qualified immunity protects public officers "from undue interference with their duties and from potentially disabling threats of liability." Harlow v. Fitzgerald, 457 U.S. 800, 806 (1982). It allows government officials to "carry out their discretionary duties without the fear of personal liability or harassing litigation." Oliver v. Fiorino, 586 F.3d 898, 904 (11th Cir. 2009). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation omitted).

In order to establish qualified immunity, a defendant first must show that she was acting within the scope of her discretionary authority at the time of the alleged misconduct. See, e.g., Oliver, 586 F.3d at 905; O'Rourke v. Hayes, 378 F.3d 1201, 1205 (11th Cir. 2004). No one disputes that Mulvey and Loyal were acting within the scope of their discretionary authority in investigating corruption in the Golden Beach Police Department, and in submitting probable cause affidavits, or that Breeden and Sullivan were acting within the scope of their discretionary authority in supervising Mulvey and Loyal.

10

Once a defendant has established that she was acting within her discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate. Lee, 284 F.3d at 1194. The arresting officer would be entitled to qualified immunity unless the plaintiff establishes that "(1) [she] violated a federal statutory or constitutional right, and (2) the unlawfulness of [her] conduct was 'clearly established at the time.'" Manners v. Cannella, 891 F.3d 959, 968 (11th Cir. 2018) (quoting District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018)). These two requirements may be analyzed in any order. See Pearson v. Callahan, 555 U.S. 223, 236 (2009). The questions, then, boil down to whether Mulvey and Loyal's conduct violated the Fourth Amendment, and whether it was clearly established at the time that their conduct did so. Because we conclude that Mulvey and Loyal did not violate any constitutional right, we have no reason to address separately the "clearly established" prong.

B.

A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed. Albright v. Oliver, 510 U.S. 266, 270 (1994). Paez, Peters, and Diaz say that each of the Appellants violated the Fourth Amendment in pursuing malicious prosecutions against them. In order "[t]o establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort

11

of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free of unreasonable seizures." See, e.g., Kingsland v. City of Miami, 382 F.3d 1220, 1234 (11th Cir. 2004). "[T]he constituent elements of the common law tort of malicious prosecution include[]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Wood v. Kesler, 323 F.3d 872, 882 (11th Cir. 2003).

This appeal turns on the second part of the federal malicious prosecution claim: whether Paez, Peters, and Diaz were unreasonably seized in violation of the Fourth Amendment. If the conduct alleged did not violate the Fourth Amendment, the Appellants would be entitled to qualified immunity and the suit must be dismissed. A § 1983 malicious prosecution claim includes, though is not limited to, an unconstitutional arrest. See, e.g., Kingsland, 382 F.3d at 1235; Kjellsen v. Mills, 517 F.3d 1232, 1238 (11th Cir. 2008); Whiting v. Traylor, 85 F.3d 581, 584 (11th Cir. 1996); see also Heck v. Humphrey, 512 U.S. 477, 484 (1994). An arrest made without probable cause is an unreasonable seizure. See, e.g., Grider v. City of Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010). The Fourth Amendment provides, in pertinent part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation," U.S. Const. amend. IV, and the law requires that a warrant for an arrest be supported by "sufficient information to establish

12

probable cause," Holmes v. Kucynda, 321 F.3d 1069, 1083 (11th Cir. 2003) (citing Franks v. Delaware, 438 U.S. 154, 164 (1978)); see also Illinois v. Gates, 462 U.S. 213, 238–39 (1983).  Probable cause, in turn, is established "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003) (emphasis omitted) (quoting McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1243 (11th Cir. 2003)).

The affidavits alleged that there was probable cause to believe each Appellee had committed multiple crimes.  At oral argument, all of the parties conceded that the existence of probable cause (or even arguable probable cause) as to any one offense would defeat a § 1983 malicious prosecution claim.  Though this issue is unresolved in our case law pertaining to § 1983 malicious prosecution claims, we have said that arguable probable cause as to any one offense is sufficient to defeat § 1983 claims for other Fourth Amendment violations, including false arrest and unlawful searches.  See Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997) (finding officer entitled to qualified immunity when a misstatement in a search warrant vitiated arguable probable cause as to one offense, but the misstatement was "not relevant to the existence of probable cause to believe that . .

13

. other . . . crimes had been committed"); Bailey v. Bd. of Cty. Comm'rs of Alachua Cty., 956 F.2d 1112, 1119 n.4 (11th Cir. 1992) ("The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest."). Based on the parties' concessions, we need not resolve the question as it relates to malicious prosecution. Rather, we assume arguendo that a finding of probable cause (or arguable probable cause) as to one offense announced in the affidavit would defeat the Appellees' § 1983 malicious prosecution claims.

Probable cause "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.' Probable cause 'is not a high bar.'" Wesby, 138 S. Ct. at 586 (first quoting Gates, 462 U.S. at 243–44 n.13; then quoting Kaley v. United States, 134 S. Ct. 1090, 1103 (2014)). Far from "'requir[ing] convincing proof' that [an] offense was committed," probable cause is a flexible and fluid concept, that looks instead to the totality of the circumstances to determine the reasonableness of the officer's belief that a crime has been committed. Manners, 891 F.3d at 968 (quoting Bailey, 956 F.2d at 1120). Accordingly, "[t]he test for probable cause is not reducible to 'precise definition or quantification,'" and "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence . . . have no place in the [probable-cause] decision.'" Florida v. Harris, 133 S. Ct. 1050, 1055 (2013) (first quoting

14

Maryland v. Pringle, 540 U.S. 366, 371 (2003); then quoting Gates, 462 U.S. at 235).

Importantly, as we noted in Manners, an affirmative defense to an alleged crime does not necessarily vitiate probable cause. Manners, 891 F.3d at 971–72. Indeed, "arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." Dahl v. Holley, 312 F.3d 1228, 1234 (11th Cir. 2002), abrogated on other grounds by Lozman v. City of Riviera Beach, 138 S. Ct. 1945 (2018). This is so, in part, because probable cause is a preliminary determination made initially in an ex parte proceeding. Again, it does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence. See Manners, 891 F.3d at 968. A law enforcement officer is not required to resolve every inconsistency found in the evidence. Moreover, police officers aren't lawyers; we do not expect them to resolve legal questions or to weigh the viability of most affirmative defenses. See Williams v. City of Albany, 936 F.2d 1256, 1260 (11th Cir. 1991) ("Whether the statute of limitations bars a prosecution is a question of law. The officers properly deferred legal decisions to the district attorney."). So long as it is reasonable to conclude from the body of evidence as a

15

whole that a crime was committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause. The touchstone remains the reasonableness of the officer's conduct.

It is also true that officers may not lie about or conceal critical information. The Supreme Court has held that the Fourth Amendment demands a warrant affiant provide information with a reasonable belief in its veracity:

> [W]hen the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a <u>truthful</u> showing. . . . This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct . . . [but] surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

<u>Franks</u>, 438 U.S. at 165–66. Intentional or reckless material misstatements or omissions in a warrant affidavit thus could violate the Fourth Amendment. <u>Kelly v. Curtis</u>, 21 F.3d 1544, 1555 (11th Cir. 1994). Negligent misstatements or omissions, on the other hand, do not. <u>Id.</u>

We have employed a two-part test to determine whether a misstatement in an officer's warrant affidavit amounts to a violation of the Fourth Amendment. First, we ask whether there was an intentional or reckless misstatement or omission. Then, we examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included. <u>See</u> <u>United States v. Kirk</u>, 781 F.2d 1498, 1502 (11th Cir. 1986) ("[W]e must consider: (1) whether the alleged misstatements

16

in the affidavit were made either intentionally or in reckless disregard for the truth, and, if so, (2) whether, after deleting the misstatements, the affidavit is insufficient to establish probable cause." (citing Franks, 438 U.S. 154)); see also Madiwale, 117 F.3d at 1326–27 ("[A] warrant affidavit violates the Fourth Amendment when it contains omissions made intentionally or with a reckless disregard for the accuracy of the affidavit . . . if inclusion of the omitted facts would have prevented a finding of probable cause." (internal citation and quotation omitted)); Stewart v. Donges, 915 F.2d 572, 582 n.13 (10th Cir. 1990) ("Whether the omitted statement was material is determined by examining the affidavit as if the omitted information had been included and inquiring if the affidavit would still have given rise to probable cause for the warrant.").

Three basic rules, then, guide our consideration today: (1) a warrant for arrest must establish probable cause for an offense; (2) a warrant affidavit must contain truthful statements that do support probable cause; and (3) an affidavit's omissions may lead to an unreasonable and unconstitutional warrant-based arrest if information that the affiant knew about but intentionally or recklessly disregarded negates a finding of probable cause. Because at this stage in the proceedings we must accept the facts as alleged in the complaint as true, we take as true that the exculpatory information was known to Loyal and Mulvey and their omission was made either intentionally or in reckless disregard of the truth. Our only question,

17

then, is whether the affidavits still would have established probable cause to believe the officers had violated Florida Statute § 817.034(4), if they had included the omitted information that they knew about.  If so, Mulvey and Loyal did not violate the Fourth Amendment, nor did their supervisors, and each of them would be entitled to qualified immunity.

Paez, Peters, and Diaz face a difficult road in perfecting their § 1983 claims. As the Supreme Court has explained in a similar context, "the . . . standard of objective reasonableness . . . defines the qualified immunity accorded an officer whose request for a warrant allegedly caused an unconstitutional arrest.  Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Malley v. Briggs, 475 U.S. 335, 344–45 (1986) (citation omitted); see also id. at 341 ("Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.").  Put another way, if the affidavits (including the omitted information) would have demonstrated even arguable probable cause -- that a reasonable officer could have believed an offense was committed -- then the officers are entitled to qualified immunity.  See, e.g., Grider, 618 F.3d at 1257.

Here, we find that the affidavits would have established not just arguable probable cause, but probable cause itself.

IV.

A.

We consider the § 1983 malicious prosecution claims against Mulvey and Loyal together because the § 1983 claims levelled against Mulvey and Loyal are essentially the same. Both Mulvey and Loyal swore and signed each of the affidavits. Loyal was referred to as the "Affiant" and Mulvey as the "Co-Affiant." The complaint alleges that Mulvey and Loyal conducted the investigation together and that each knew about the relevant information that the Appellees claim was omitted. In addition, although Mulvey and Loyal are represented by different counsel on appeal, each has adopted the arguments of the other.

After reviewing all of the relevant information -- what was included and what was omitted -- there still was probable cause to believe Paez, Peters, and Diaz had engaged in an organized scheme to defraud in violation of Florida's criminal law, and that, therefore, there was no violation of the Fourth Amendment. Reliable information described in the affidavits still would have led a reasonable officer to believe that Paez, Peters, and Diaz intentionally failed to report off-duty work hours that would have required them to pay administrative fees. The omissions do not undercut the reasonableness of the belief. Among other things, the affidavits

asserted probable cause to charge each of the three law enforcement officers with engaging in an organized scheme to defraud in violation of the Florida Communications Fraud Act, Florida Statute § 817.034.  The relevant provision of Florida's penal code makes it a crime to "engage[] in a scheme to defraud and obtain[] property thereby."  Fla. Stat. § 817.034(4)(a).  "Property" is defined as "anything of value."  Fla. Stat. § 817.034(3)(c).  A "scheme to defraud" is "a systematic, ongoing course of conduct with intent to defraud one or more persons, or with intent to obtain property from one or more persons by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act."  Fla. Stat. § 817.034(3)(d).  To "defraud" means to "cause injury or loss to (a person or organization) by deceit; to trick (a person or organization) in order to get money."  Defraud, Black's Law Dictionary 516 (10th ed. 2014) (internal punctuation omitted).

Although there are countless ways to engage in a scheme to defraud -- indeed the concept is as wide as the imagination of man -- the conduct here would fit the basic statutory definitions.  Having repeatedly and deceptively failed to report off-duty work hours and having thereby deprived the Town of fees to which it was rightfully entitled, the Appellees appeared to have engaged in a "systematic, ongoing course of conduct with intent to defraud."  Fla. Stat. § 817.034(3).  Probable cause, then, comes down to this: since Paez, Peters, and Diaz repeatedly

20

withheld relevant information about off-duty work in order to avoid payment of fees, there was sound reason to believe each had engaged in an organized scheme to defraud. The affidavits themselves set out sufficient facts drawn from more than one reliable source that would lead a reasonable officer to believe the Appellees repeatedly withheld information in order to avoid paying fees. The claimed omissions do not undermine the reasonableness of the affidavits.

The civil rights complaint references three pieces of omitted information: that the administrative fees were not legally owed by the officers; that, in any event, the officers were allowed to pay the fees late; and that the officers had, in fact, paid the fees. We examine each in turn. Since the omitted facts only relate to whether Paez, Peters, and Diaz had the "intent to defraud" or the "intent to obtain property . . . by false or fraudulent . . . representations," our analysis focuses on intent.

First, the Appellees say that, pursuant to Article 29 of the Collective Bargaining Agreement ("CBA") between the Town and the police officer's union, the GBPD expressly agreed to charge administrative fees only to off-duty employers, not to the officers themselves. Thus, they say, because Mulvey and

21

Loyal had a copy of the CBA,[3] they knew or should have known that the officers were not contractually responsible for paying the administrative fees.

We remain unpersuaded. Even with conflicting information about whether the officers were responsible for paying the administrative fees, the affiants still could reasonably believe that Paez, Peters, and Diaz were required to report their off-duty work hours and pay the administrative fees. This is so because reliable sources told them as much. Mulvey and Loyal were informed by the Golden Beach Finance Director, Maria Camacho, that "GBPD officers who work off-duty details are required to pay an administrative fee." The Appellees do not dispute that Mulvey and Loyal were told this. And the Finance Director's responsibilities included collecting the fees, so it was perfectly reasonable for the investigating officers to credit her account.

The investigating officers did not rely just on this statement, however. According to their affidavits, Mulvey and Loyal also reviewed GBPD spreadsheet records, which catalogued GBPD officers' off-duty work and the payment of administrative fees. Indeed, those spreadsheets contained highly detailed information about the payment of administrative fees, including the amount of fees

---

[3] Mulvey and Loyal apparently did have the CBA and did recognize its significance to the administrative fees. At least one of the affidavits recognized that the CBA covered the administrative fees, saying the fees "are required to be paid by all GBPD officers covered by the Collective Bargaining Agreement working off-duty details."

22

owed and paid, the date of payment, and even the form of payment. These spreadsheets came from reliable sources. The Golden Beach Finance Director explained that the officers themselves were responsible for any missing details in the spreadsheets -- "the accuracy of the spreadsheet relies upon the accuracy of the documentation submitted by the off-duty officer and [the Operations Captain]." In fact, even the Appellees say, in a charge they leveled against the Town of Golden Beach, that there was an "unwritten policy and practice[] to charge the Golden Beach police officers . . . [the] administrative fee." A reasonable investigating officer could accept that the CBA said one thing but that the policy and practice was quite another.

As we've noted, probable cause is a preliminary determination. The investigating officers were not required to resolve legal matters in dispute, understand the nuances of any possible defense, or answer them in order to decide whether there was probable cause. Jordan, 487 F.3d at 1356–57. Even if there was an affirmative defense that the fees were not contractually owed by the officers themselves and they therefore received no legal benefit from their conduct, that defense does not negate the preliminary determination of probable cause.

In the second place, the Appellees say that -- even if the officers themselves were required to pay the administrative fees -- Golden Beach allowed its officers to pay the fees late. As we see it, this fact is irrelevant. The affidavits didn't claim

23

that Paez, Peters, and Diaz had failed to timely remit payments due. Rather, the affidavits charged the three officers with having taken affirmative steps to conceal essential facts from their employer (the GBPD) that would have evidenced that administrative fees were owed. Paez, Peters, and Diaz offer no explanation for the discrepancies found in the spreadsheets apparently based on their failure to report essential facts. The spreadsheets were compared with off-duty employer records, and the comparison revealed repeated instances of unreported or under-reported off-duty work.

Finally, the Appellees claim that the affidavits omitted any reference to a 2010 sworn statement by the Golden Beach Finance Director indicating that they had fully paid -- indeed, had overpaid -- the claimed administrative fees for the off-duty work that they had reported. The problem again, however, is that the failure to pay is not the central element of the charged fraud; rather, the failure to report the off-duty hours is the critical component. The affidavits asserted that the spreadsheets maintained by the GBPD and the Town of Golden Beach, at the time that they reviewed it, had been "recently updated." Yet the spreadsheets, when compared to records drawn from off-duty employers, revealed numerous instances of off-duty work being omitted. Thus, for example, the affidavit supporting the arrest warrant for Paez identified some 37 separate dates of off-duty work between December 2008 and September 2009 that were missing from the spreadsheets. The

24

affidavit supporting the Peters arrest identified 21 such dates between December 2008 and September 2009.  And the affidavit providing the basis for the warrant to arrest Diaz, in turn, identified 46 such dates between March 2009 and December 2009.  The affidavits also said that Mulvey and Loyal reviewed subpoenaed "payroll records, off-duty, and on-duty logs" from the GBPD and the Town of Golden Beach in April 2010.  None of the omitted information suggests that the investigating officers' sources were unreliable or that there weren't significant discrepancies between the GBPD spreadsheets and off-duty employer records.

Mulvey and Loyal reasonably believed that Paez, Peters, and Diaz committed fraud by their repeated failure to report regardless of the fee-payment status.  And even if the affidavits had included a statement saying that in 2010 the Appellees had paid the "claimed administrative fees" -- the fees for the work they had reported -- nothing about the payment status would negate a finding that they intentionally concealed material information from the Department.  The unreported information was relevant, material to any examining official, and it should have been reported.  The investigating officers had reason to believe that Paez, Diaz, and Peters were required to pay administrative fees, and that they were also required to report their off-duty hours to the Golden Beach Police Department.  A prudent person would have believed based on an examination of all the operative facts -- what was included and what was omitted -- that the officers had engaged in

25

a scheme to defraud in violation of Florida law.  Their arrests were not unreasonable and did not violate the Fourth Amendment.  Since the allegations, taken as true, do not establish a violation of the Constitution, Mulvey and Loyal were entitled to qualified immunity on each of the § 1983 malicious prosecution claims.

Finally, because Mulvey and Loyal committed no constitutional violations, their supervisors, Breeden and Sullivan, cannot be found liable either for violating § 1983.  The claims against Sergeant Sullivan and Supervisory Agent Breeden are premised entirely on their supervision of Loyal and Mulvey.  But "there can be no supervisory liability . . . if there was no underlying constitutional violation."  Gish v. Thomas, 516 F.3d 952, 955 (11th Cir. 2008); see also Myers v. Bowman, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right.").  Since there was no Fourth Amendment violation, much less a clearly established Fourth Amendment violation, Breeden and Sullivan are entitled to qualified immunity as well.

## B.

The Appellees also brought common law malicious prosecution claims under Florida law against Mulvey and Loyal, though not against their supervisors. The district court again refused to dismiss the claims on the grounds that they are

barred under Florida law by official immunity, a species of sovereign immunity that shields officers from tort liability unless the officer "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a).

In Florida, the elements of the common law tort of malicious prosecution are these:

> (1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding.

Durkin v. Davis, 814 So. 2d 1246, 1248 (Fla. 2d DCA 2002).

We have pendent appellate jurisdiction over the district court's denial of the motion to dismiss these state law claims. The denial of qualified immunity as to the § 1983 claims falls squarely within our appellate jurisdiction. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985); see also Howe v. City of Enterprise, 861 F.3d 1300, 1302 (11th Cir. 2017); Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003). We also have pendent appellate jurisdiction over issues that are "inextricably intertwined" or "inextricably interwoven" with the issue on appeal. See United States v. Masino, 869 F.3d 1301, 1305 (11th Cir. 2017); Harris v. Bd. of Educ. Of Atlanta, 105 F.3d 591, 594 (11th Cir. 1997). Pendent appellate

27

jurisdiction is limited and rarely used.  See King v. Cessna Aircraft Co., 562 F.3d 1374, 1379–80 (11th Cir. 2009).  Issues are not "inextricably intertwined" with the question on appeal when "the appealable issue can be resolved without reaching the merits of the nonappealable issues."  In re MDL-1824 Tri-State Water Rights Litig., 644 F.3d 1160, 1179 (11th Cir. 2011).  Here, however, we cannot evaluate the denial of qualified immunity on the § 1983 malicious prosecution claims without necessarily evaluating the merits underlying the state law malicious prosecution claims.  Both analyses require us to consider whether the affidavits sufficiently establish probable cause.  Where a finding of probable cause (or arguable probable cause) is a component of a qualified-immunity claim on appeal, a state law claim that also depends on the existence of probable cause is "inextricably intertwined" for purposes of pendent appellate jurisdiction.  See Valderrama v. Rousseau, 780 F.3d 1108, 1111 n.3 (11th Cir. 2015).

We review the district court's ruling on a motion to dismiss de novo.  See Fortner v. Thomas, 983 F.2d 1024, 1027 (11th Cir. 1993).  The denial of a motion to dismiss is proper if the plaintiff's complaint, taking the facts alleged therein as true, makes out a claim "that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

28

Our Fourth Amendment § 1983 probable cause analysis applies with equal force to state common law malicious prosecution claims. The absence of probable cause is a necessary element of common law malicious prosecution. See Miami-Dade County v. Asad, 78 So. 3d 660, 664 (Fla. 3d DCA 2012). For the same reasons the complaint has failed to make out a § 1983 malicious prosecution claim, it also fails to plausibly allege a state common law malicious prosecution claim. These claims, too, should have been dismissed.

The long and short of it is that officers Mulvey and Loyal submitted warrant affidavits supporting a finding of probable cause. Nothing alleged in the Appellees' civil rights complaint undermines probable cause and thus, Mulvey and Loyal, as well as their supervisors Breeden and Sullivan, were entitled to qualified immunity on the § 1983 claims. And because there was probable cause to arrest, the state law malicious prosecution claims fail as well. The judgment of the district court is reversed and the cause remanded for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**