[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11261

Non-Argument Calendar

_____

RANDOLPH CLAY COOPER,

Plaintiff-Appellant,

*versus*

SHAWN LUCAS LISTER,
AARON GLASS,
ZACH KUIKEN,
TOWN OF LOXLEY, ALABAMA,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama
D.C. Docket No. 1:21-cv-00324-C

_____

Before JORDAN, ROSENBAUM, and GRANT, Circuit Judges.

PER CURIAM:

Randolph Clay Cooper sued Officer Shawn Lister, Sergeant Aaron Glass, and Lieutenant Zach Kuiken for violating his constitutional rights following an alleged false arrest, as well as the Town of Loxley for its alleged deliberate indifference to deficiencies in officer training. Mr. Cooper now appeals the district court's grant of summary judgment as to all claims in favor of the officers and the Town of Loxley. After careful review, we affirm.

**I**

This case stems from a contentious dispute among siblings over a family farm in Baldwin County, Alabama. In 2011, Carol Cooper, Mr. Cooper's mother, conveyed a 10.1-acre parcel to her daughter and son-in-law, Rebecca and David Bonner, through a quitclaim deed. Following his mother's death in April of 2012, Mr. Cooper persistently filed lawsuits against his siblings claiming a property interest in the farm based on alleged improper transfers from their father's estate. As the Alabama Supreme Court explained, Mr. Cooper failed to assert ownership in successive lawsuits brought in 2012 and 2015. *See Cooper v. Cooper*, 279 So. 3d 561 (Ala. 2018), *reh'g denied* (Ala. Jan. 4, 2019).

On August 23, 2019, Mr. Cooper's brother, Terry Cooper, filed a complaint with the Loxley Police Department alleging that Mr. Cooper had stolen hay bales from the farm. Lt. Kuiken initiated an investigation to ascertain ownership of the property. In an interview, the Bonners claimed ownership and presented a copy of their 2011 quitclaim deed. Ms. Bonner also emailed Lt. Kuiken a copy of the 2018 Alabama Supreme Court decision in *Cooper*. Lt. Kuiken interpreted the Court's affirmance of summary judgment in favor of the Bonners as validating their ownership of the property.

On September 13, 2019, Mr. Cooper executed and recorded a deed to transfer the farm to himself and his siblings. In October of 2019, the siblings filed a quiet title/slander of title action against Mr. Cooper regarding this deed. In April of 2020, the siblings' attorney sent a letter to the Loxley Police Chief, which included the first amended complaint in the quiet title action, the final orders from the 2012 and 2015 lawsuits, the 2011 quitclaim deed to the Bonners, and a statement that Mr. Cooper was not permitted on the farm. Lt. Kuiken understood this letter to indicate that the courts had ruled in favor of the Bonners multiple times, further confirming that Mr. Cooper was not an owner of the property.

On May 27, 2020, Mr. Bonner spotted Mr. Cooper's truck and trailer parked on the farm and saw him raking hay aboard a tractor. After Mr. Bonner called the Loxley Police Department to report that Mr. Cooper was trespassing, Officer Lister, Sgt. Glass, and Lt. Kuiken responded and arrived at the scene. On his way there, Officer Lister spoke to Lt. Anthony Lovell in the

investigation division, who advised him that Mr. Cooper had no right to be on the premises and was therefore trespassing.

At the farm, Mr. Cooper defied the officers' numerous commands to leave the property and continued to drive the tractor away from them. Finally, Mr. Cooper complied and was handcuffed on the ground. He was charged with criminal trespass in the second degree and with attempting to elude law enforcement. In August of 2020, he filed a motion to dismiss the criminal charges, arguing that the arrest occurred outside of Loxley's police jurisdiction. A month later, the charges were dismissed by the municipal court for the Town of Loxley.

In September of 2020, a grand jury returned an indictment for Mr. Cooper's theft of the hay bales, and on May 24, 2021, he was arrested. In November of 2021, the Baldwin County circuit court granted a motion to dismiss the criminal proceedings contingent upon Mr. Cooper's payment of restitution. Separately, in the 2019 quiet title action filed by the siblings, Mr. Cooper filed a counterclaim. The siblings moved for summary judgment on Mr. Cooper's claims—for declaratory judgment and to remove an alleged cloud on title. The circuit court granted this motion in December of 2021.

In January of 2020, Mr. Cooper filed a malicious prosecution and false imprisonment action against the Bonners arising out of his September 2019 arrest for trespass, and the complaint was later amended to include the arrest in May of 2020. The Bonners moved for summary judgment, arguing that probable cause existed

because Mr. Cooper did not have a property interest where the arrests occurred. The circuit court granted this motion and dismissed the action in August of 2022. Most recently, on June 14, 2024, the Alabama Supreme Court affirmed the circuit court's final order granting summary judgment to the siblings in the 2019 quiet title action.

## II

We review *de novo* a district court's grant of summary judgment based on qualified immunity. *See Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011). Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "Once the movant adequately supports its motion, the burden shifts to the nonmoving party to show that specific facts exist that raise a genuine issue for trial." *Dietz v. Smithkline Beecham Corp.,* 598 F.3d 812, 815 (11th Cir. 2010). "Speculation does not create a *genuine* issue of fact." *Cordoba v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis in original) (citation omitted). To avoid summary judgment, the nonmoving party "must show more than the existence of a 'metaphysical doubt' regarding the material facts." *Ireland v. Prummell*, 53 F.4th 1274 (11th Cir. 2022) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

## III

Mr. Cooper argues that Officer Lister, Sgt. Glass, and Lt. Kuiken exceeded their discretionary authority and violated his Fourth Amendment right not to be arrested without probable

cause. He also argues that the district court erred in determining that the officers have no liability based on his alleged malicious prosecution claim for the hay-theft arrest. Finally, he argues that the district court erred in concluding that the Town of Loxley is not liable.

## A

Under Alabama law, local police officers are authorized to make an arrest inside the county that contains their police jurisdiction—even if they are outside their immediate municipality:

> An arrest may be made, under a warrant or without a warrant, by any sheriff or other officer acting as sheriff or his deputy, or by any constable, acting within their respective counties, or by any marshal, deputy marshal or *policeman of any incorporated city or town within the limits of the county.*

Ala. Code 1975, § 15-10-1 (emphasis added). Accordingly, Alabama courts have repeatedly upheld the lawfulness of arrests occurring outside of a specific police jurisdiction when the arrest at issue occurred inside the county where the police jurisdiction lay. *See e.g., Ex parte Pettway*, 594 So. 2d 1196, 1201 n.5 (Ala. 1991); *Brooks v. State*, 471 So. 2d 511 (Ala. Crim. App. 1985). Further, we must ask "whether the act complained of . . . would be within, or reasonably related to, the outer perimeter of an official's discretionary duties. The scope of immunity 'should be determined by the relation of the [injury] complained of to the duties entrusted to the officer.'"

*Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998) (internal quotation omitted).

Here, the arresting officers acted within their discretionary authority when they arrested Mr. Cooper in Baldwin County, which encompasses the Town of Loxley. Further, they acted within the perimeter of their duties, as Lt. Lovell instructed Officer Lister that Mr. Cooper had no right to be on the property and was therefore trespassing.

On appeal, Mr. Cooper argues that the officers exceeded their authority by refusing to defer to the jurisdiction of the municipal court to ascertain title to the property in the pending quiet title action. But this claim is irrelevant to our analysis because, as the district court noted, preventing officers from making arrests for trespass solely because of pending civil actions over title would hinder law enforcement's efforts and enable Mr. Cooper to trespass indefinitely so long as he continued to file lawsuits. Therefore, because Officer Lister, Sgt. Glass, and Lt. Kuiken were acting within their discretionary authority, Mr. Cooper now must show that the arrest itself was unconstitutional under clearly established law. *See Wood v. Kesler*, 323 F.3d 872, 878 (11th Cir. 2003). We are unpersuaded on this point.

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV. Under the Fourth Amendment, "an arrest is a 'seizure' of the person." *Case v. Eslinger*, 555 F.3d 1317, 1326 n.10 (11th Cir. 2009). Whether a seizure is reasonable hinges on the presence of probable cause. *See id.*

at 1326. Probable cause to arrest exists when officers have sufficient "facts and circumstances within their collective knowledge" to cause a reasonable person to "believe that an offense has been or is being committed." *United States v. Blasco*, 702 F.2d 1315, 1324 (11th Cir. 1983). Probable cause "is not a high bar." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (quoting *D.C. v. Wesby*, 583 U.S. 48 (2018)). Rather, it is a "flexible and fluid concept" that focuses on the "totality of the circumstances." *Id.* at 1286.

In deciding whether probable cause exists, arresting officers "are not required to sift through conflicting evidence." *Id.* (quoting *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002)). Law enforcement officers are not lawyers, and therefore "we do not expect them to resolve legal questions or to weigh the viability of most affirmative defenses." *Id.* at 1286 (citing *Williams v. City of Albany*, 936 F.2d 1256, 1260 (11th Cir. 1991)). "[T]he presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause. The touchstone remains the reasonableness of the officer's conduct." *Id.* at 1287. Further, "[w]hile an officer who arrests an individual without probable cause violates the Fourth Amendment, this does not inevitably remove the shield of qualified immunity." *Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1137 (11th Cir. 2007).

Qualified immunity shields public officials from civil liability if their conduct does not violate clearly established law "of which a reasonable person would have known." *Simmons v. Bradshaw*, 879 F.3d 1157, 1162 (11th Cir. 2018) (internal quotation omitted). To

receive qualified immunity, the public official must first prove that he was acting within the scope of his discretionary authority. *See Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017). This standard is satisfied if the officer's actions were "undertaken pursuant to the performance of his duties and within the scope of his authority." *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (internal quotation omitted). Once discretionary authority is established, the burden shifts to the plaintiff to show that qualified immunity is improper. The plaintiff can meet this standard by establishing that (1) the defendant's conduct violated a constitutional right, and (2) the right at issue was "clearly established at the time of the alleged violation." *Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019).

Even if probable cause is absent, a court may grant qualified immunity to an officer who had "arguable probable cause" to make an arrest. *See Skop*, 485 F.3d at 1137 (quoting *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2021)). "In the false arrest context, arguable probable cause exists if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *Edger v. McCabe*, 84 F.4th 1230, 1236–37 (11th Cir. 2023) (citing *Garcia v. Casey* 75 F.4th 1186, 1187 (11th Cir. 2023)). "An officer lacks arguable probable cause only if 'the law on the date of the alleged misconduct makes it obvious that the [officer's] acts violated the plaintiff's rights in the specific set of circumstances at issue.'" *Casey*, 75 F.4th at 1186 (internal citation omitted). Thus, "the dispositive question" is whether, at the time of the arrest, the law clearly established that an objective officer could not have reasonably concluded that

probable cause existed to arrest Mr. Cooper under the circumstances. *See id.* (quoting *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018)).

Moreover, "the arguable probable cause inquiry in a false arrest case is no different from the clearly established law inquiry." *Edger*, 84 F.4th at 1236 (citing *Casey*, 75 F.4th at 1187). If we determine "that the officers had arguable probable cause then we conclude that their violation of the law was not clearly established." *Id.*

"Clearly established" means that the law is sufficiently clear such that a reasonable officer would understand that their conduct is unlawful. *See Helm v. Rainbow City, Ala.*, 989 F.3d 1265, 1272 (11th Cir. 2021) (citing *Wesby*, 583 U.S. at 63). This standard is not defined at a high level of generality, *see Wesby*, 583 U.S. at 64, and the inquiry instead "must be undertaken in light of the specific context of the case." *Edger*, 84 F.4th at 1237. In the Fourth Amendment setting, the Supreme Court has "stressed the need to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment.'" *Wesby*, 583 U.S. at 64 (internal citation omitted). There need not be "a case directly on point," but "existing precedent must place the lawfulness of the particular arrest 'beyond debate.'" *Id.* (internal citation omitted).

Here, the arresting officers had probable cause to arrest Mr. Cooper for criminal trespass on May 27, 2020, because a reasonable officer, armed with their "collective knowledge," could believe that Mr. Cooper was trespassing on the property. *See Blasco*, 702 F.2d at 1324. During his investigation, Lt. Kuiken received the Bonners'

deed as proof that they were record title holders and a letter from their lawyer that noted the repeated rejections of Mr. Cooper's ownership claim by the Alabama courts. The letter also informed the Loxley Police Department that Mr. Cooper did not have permission to be on the property. Further, Lt. Kuiken reviewed the published November 2018 opinion from the Alabama Supreme Court, which he reasonably understood to represent that Mr. Cooper was not an owner. On the day of the arrest, the Loxley Police Department was once again informed that Mr. Cooper was trespassing, and Mr. Bonner, a record title owner, demanded his removal. As the district court concluded, the officers' duty was not to "resolve [the] legal question[ ]" of whether Mr. Cooper indeed owned a one-third interest in the land. *See Paez*, 915 F.3d at 1286. In fact, Lt. Kuiken had reason to believe that Mr. Cooper was not an owner because the Baldwin County circuit court and the Alabama Supreme Court had already rejected his claim to the farm. Thus, no constitutional violation occurred because the officers had probable cause for Mr. Cooper's arrest on May 27, 2020.

At a minimum, arguable probable cause existed for the arrest. "[L]ooking at the entire legal landscape at the time of the arrest[ ], [Officer Lister, Sgt. Glass, and Lt. Kuiken] could have interpreted the law as permitting the arrest[ ]." *Edger*, 84th at 1236–37. We have upheld qualified immunity for arrests involving trespass even when legal documentation showed that the arrestee had colorable title to the land. *See Hutton v. Strickland*, 919 F.2d 1531 (11th Cir. 1990).

In *Strickland*, the Huttons conveyed a ranch property to the Laws under a land sale contract and sought repossession after the Laws defaulted, allowing the Huttons to record a deed transferring the property back to themselves. *See id.* at 1533. The investigating officer and local sheriff were informed that the Huttons' deed gave them a colorable claim to title. *Id* at 1534. The Huttons then attempted to retake the ranch by cutting the chain lock on the front gate and driving past a "No Trespassing" sign. *See id.* The Huttons were arrested and subsequently sued the sheriff for false arrest. *See id.* at 1535.

We reversed the district court's denial of the sheriff's motion for summary judgment based on qualified immunity. *Id.* The apparent evidence of the Huttons' trespass at the time of the officers' arrival at the ranch—a cut lock, a pair of bolt cutters, a rifle, combined with the sheriff's instruction to arrest—sufficed to show that the officers had not violated clearly established law. *See id.* at 1539. "The Huttons' beliefs concerning the legality of their entry onto the ranch property are irrelevant to qualified immunity analysis, which examines the conduct of the subject government officials only." *Id.* at 1540. Ownership of the property was a disputed issue when the Huttons were arrested, yet we refused to hold the sheriff or the arresting officers "to knowledge of property law in determining probable cause." *See id.* at 1542. We thus concluded that the sheriff was entitled to qualified immunity. *See id.*

Here, the law in this circuit was not so "clearly established" in May of 2020 such that a reasonable officer would have viewed

23-11261                Opinion of the Court                13

Mr. Cooper's arrest as unlawful. As an initial matter, Alabama courts had rejected Mr. Cooper's claim to the farm long before his arrest was effected. But even if we give Mr. Cooper the benefit of the doubt, his claim still fails. As previously discussed, under our precedent, officers may have probable cause to arrest for trespass even when an arrestee is authorized to be on the property. *See Strickland*, 919 F.2d at 1541. This is because "what counts for qualified immunity purposes relating to probable cause to arrest *is the information known to the defendant officers . . . at the time of their conduct*, not the facts known to the plaintiff then or those known to a court later." *Jones v. Cannon*, 174 F.3d 1271, 1283 n.4 (11th Cir. 1999) (emphasis added). And what the officers knew at the time of the arrest here—as evidenced by the previous court decisions, the attorney's letter, the 2011 quitclaim deed, and the phone call from Mr. Bonner urging officers to remove Mr. Cooper from his farm— was enough for the officers to believe that Mr. Cooper was trespassing. The fact that Mr. Cooper sought to gain ownership through a pending appeal does not negate the existence of probable cause.

Even if neither probable cause nor arguable probable cause existed for the trespass arrest, the officers would still face no liability. We have said that "[p]robable cause for an arrest may be found if there is probable cause to believe *any* crime was committed." *Manners v. Canella*, 891 F.3d 959, 969 (11th Cir. 2018) (emphasis added). Here, such probable cause, and at a minimum arguable probable cause, existed for officers to infer that Mr. Cooper had committed a crime under Alabama law when he intentionally fled

from them. Mr. Cooper knew the officers were trying to arrest him but defied their commands and continued to drive the tractor away. Although Mr. Cooper argues that he was initially unaware that the officers intended to arrest him, the relevant inquiry asks what an "objectively reasonable officer in [the] [d]efendants' position could have believed" at the time of the arrest. *See Gates*, 884 F.3d at 1300 ("[W]e have never pronounced a rigid requirement that an arresting officer must have specific evidence of the subjective intent and knowledge of a subject beyond the subject's conduct that otherwise gives rise to probable cause to arrest."). "It is not [Mr. Cooper's] post-hoc explanation of his actions that count. What matters [for arguable probable cause] is what a reasonable police officer under the circumstances could infer from those actions." *Id* at 1302. Based on the record before us, a reasonable officer could have interpreted Mr. Cooper's actions as an attempt to flee—providing, at a minimum, arguable probable cause for the arrest.

### B

To prove a Fourth Amendment violation due to malicious prosecution, the plaintiff must prove both (1) a violation of the constitutional right and (2) the elements of the common law tort. *See Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020) (citing *Paez*, 915 F.3d at 1285). Under the common law elements of malicious prosecution, Mr. Cooper "must prove that the officers 'instituted or continued' a criminal prosecution against him, 'with malice and without probable cause,' that terminated in his favor and caused damage to him." *Id.* (quoting *Paez*, 915 F.3d at 1285). If the conduct

alleged does not violate the Fourth Amendment, the officers are entitled to qualified immunity. *See Paez*, 915 F.3d at 1285.

The district court correctly concluded that the officers face no liability on Mr. Cooper's claim for malicious prosecution arising out of the presentation of the hay-theft case to a grand jury. None of the officers involved in the trespass arrest on May 27, 2020, were involved in Mr. Cooper's subsequent hay theft arrest on May 24, 2021.

Mr. Cooper agreed to restitution in exchange for a dismissal of charges, and he is therefore barred from disputing the existence of probable cause. Terminations due to "settlements in which the defendant admitted guilt" are generally "fatal to a plaintiff's ability to establish the absence of probable cause." *Laskar v. Hurd*, 972 F.3d 1278, 1288–89 (11th Cir. 2020) (citation omitted) ("[A] plaintiff who settled a prosecution by paying part of the amount his accuser demanded was estopped from contesting the absence of probable cause."). As the district court determined here, there is no evidence to suggest that Mr. Cooper agreed to restitution under protest or under a declaration of innocence. This prevents Mr. Cooper from disputing the existence of probable cause as to the hay-theft arrest.

## C

We have determined that the evidence is insufficient to show a constitutional violation stemming from Mr. Cooper's arrests in May of 2020 and May of 2021. As a result, we need not consider liability for the Town of Loxley. *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) (noting that when there is no

constitutional violation, it is unnecessary to consider the county's liability); *Vineyard v. Cnty. of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993) ("Only when it is clear that a violation of specific rights has occurred can the question of § 1983 municipal liability for the injury arise.").

Even if we determined that there was evidence of a constitutional violation, Mr. Cooper's claims against the Town of Loxley fail because he has not shown that "the municipality had an official policy that was 'the moving force of the constitutional violation.'" *Vineyard*, 990 F.2d at 1211 (citations omitted). Although "there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983," Mr. Cooper did not offer such evidence here and he has abandoned that contention. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). He grounds his claims against the Town of Loxley on alleged actions taken by the Loxley Police Chief as "the primary policy maker," but this particular theory fails. As the district court noted, it was not alleged in the complaint and "[a] plaintiff may not amend [his] complaint through argument in a brief opposing summary judgement." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004). In any event, no evidence supports this new theory. Proof of a custom or policy usually requires a history of widespread abuse, yet Mr. Cooper failed to show any history of similar issues regarding probable cause determinations. *See Gold v. City of Miami*, 151 F.3d 1346, 1351–52 (11th Cir. 1998). Further, Mr. Cooper's personal recollection of events that day alone is insufficient to reveal a policy

23-11261            Opinion of the Court                17

or custom so widespread as to impose independent liability on the Town of Loxley.

## IV

The district court's grant of summary judgment as to all of Mr. Cooper's claims is affirmed.

**AFFIRMED**.