[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10147

Non-Argument Calendar

_____

CHRISTINE MAY,

Plaintiff-Appellant,

versus

DEPUTY JOSEPH PRITCHETT,
Morgan County, Individually, et al.,

Defendants,

MORGAN COUNTY GEORGIA,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:19-cv-00082-CDL

————————————

Before ROSENBAUM, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Christine May owned a vacation home on Lake Oconee in Morgan County, Georgia, which she regularly rented to others for one-week terms. May has consistently (and, it turns out, correctly) maintained that she was within her rights to engage in short-term rentals of her property. But the County disagreed, ultimately prosecuting her for violating its zoning rules after they were amended to expressly prohibit such short-term rentals. May was convicted and spent two days in jail as a result. After the Georgia Supreme Court vindicated May's position in 2019 and dismissed her conviction, May brought this action for malicious prosecution against the County under 42 U.S.C. § 1983. The district court granted summary judgment for the County, and May appeals. After careful review, we conclude that the County's mistake of law did not erase the probable cause for May's prosecution. Because probable cause existed, May has not established a violation of her Fourth Amendment rights, an essential element of her § 1983 claim. We therefore affirm the judgment in favor of the County.

## I.

*A.  Events Leading to Amendment of the County's Zoning Ordinance*

May is a real-estate agent from New Jersey who built a timber-frame vacation home on Lake Oconee in Morgan County in 2007.  To offset the costs of the land and home construction, May began renting the property to vacationers beginning in 2008.  Until 2016, May regularly rented the property for terms of less than 30 days, usually one week at a time.

When May began renting her home, the County's zoning ordinance listed permitted uses for properties in May's zoning district (LR-1) and banned any uses that were not listed.  There was no mention of rentals of any duration.

In practice, the County took the position that the ordinance prohibited rentals of single-family dwellings for less than 30 days. A magistrate judge agreed with that interpretation in 2008, finding a homeowner guilty of engaging in illegal nightly rentals of his property.  Nevertheless, the judge told County representatives that "they needed to revise the ordinance" to provide greater clarity for short-term or vacation rentals.

Consistent with its interpretation of the ordinance, in July 2009, the County issued cease-and-desist letters to several homeowners, including May, after receiving complaints from neighbors. The letters advised that vacation or short-term rentals of less than 30 days violated the zoning ordinance, citing the magistrate judge's

ruling and Chapter 4.6 of the ordinance, which prohibited all uses not expressly permitted. An attorney for one of the homeowners responded in part that Chapter 4.6 failed to comply with due process by giving fair warning that short-term rentals were prohibited.

Despite issuing the cease-and-desist letters, the County doubted whether it could enforce the zoning ordinance against short-term renting. Minutes from a July 2010 meeting of the County Planning Commission show that the County did not believe it could enforce the magistrate judge's "case-specific" ruling, that "staff and the County Attorney had concerns regarding the legality of enforcing" Chapter 4.6, and that "more concrete" language was needed to regulate the rapidly growing vacation rental business.

Towards that end, in October 2010, the County amended the zoning ordinance to prohibit rentals for periods of less than 30 consecutive days in all zoning districts, except where specifically allowed as a conditional use. Short-term rentals were not permitted as conditional uses in the zoning district where May's property was located.

## B. The Criminal Case Against May

Because May continued to rent her home for weekly terms, the County issued her a citation in August 2011 for violating the amended zoning ordinance, thereby initiating a misdemeanor criminal proceeding against her. The criminal case was stayed for several years, however, while she and the County litigated a civil

lawsuit May filed challenging the amended zoning ordinance's ban on short-term renting. A state trial court initially agreed with her claim that her use of the property for short-term rentals was lawful under the old ordinance and so was "grandfathered" under the amended ordinance. But the Georgia Court of Appeals vacated that judgment and remanded the case for a ruling on two "threshold" procedural grounds. And on remand, the trial court concluded that May's lawsuit was barred for failure to exhaust administrative remedies or to timely challenge the amended ordinance. Both the Georgia Court of Appeals and the Georgia Supreme Court denied review.[1]

Meanwhile, after the criminal case was revived in 2015, May filed a motion to dismiss the citation, again contending that she had a grandfathered right to engage in short-term rentals of her property. She asserted that the zoning ordinance in effect when she began renting either did not prohibit such rentals or did not give constitutionally adequate warning that such rentals were prohibited. In November 2015, the state trial court denied the motion to dismiss, concluding that May's use of the property for short-term

---

[1] After losing the state-court lawsuit, May also filed an application for rezoning and a corresponding request that the County recognize her grandfathered rights. The County denied her application and her subsequent appeal of that decision. In addition, May filed an action in federal court in May 2015 seeking essentially the same relief as her prior state-court lawsuit sought, but that case was dismissed for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine. *See May v. Morgan Cnty.,* 878 F.3d 1001 (11th Cir. 2017).

rentals was not lawful under the old ordinance, so it was not grand-fathered under the amended ordinance.

Then, in March 2016, the state trial court found May guilty of violating the amended zoning ordinance and sentenced her to six months of probation, to serve the first 30 days in jail, and fined her $500.00. At the sentencing hearing, the court found that May's testimony regarding her rental activity was not "an attempt to be forthright and truthful" and that nothing was "going to get her attention except some time in Morgan County jail." The court ordered her taken into custody, and she ultimately served two days and two nights in jail before being released on a supersedeas bond.

As a condition of granting May's motion for a supersedeas bond pending appeal, the trial court ordered May to remove her listings for short-term rentals and to notify the County of any renters or guests. In April 2016, May notified the County of her intent to sell the property. Soon after, May entered an agreement with the County to not rent her home at all in exchange for removal of a warning sign about short-term renting that the County had placed in front of her house.

On appeal, the Georgia Court of Appeals affirmed the trial court's ruling that short-term rentals were barred under Chapter 4.6 of the old zoning ordinance. *May v. Morgan Cnty. (May I)*, 807 S.E.2d 28 (Ga. Ct. App. 2017). Nonetheless, the court remanded for the trial court to address May's argument that the old ordinance was void for vagueness as applied to her, though it "d[id] not envy the trial court's task."

On remand in May 2018, the state trial court ruled that the County's pre-2010 zoning ordinance was void for vagueness on the issue of short-term renting as applied to May. As a result, the court found that May's use of her property prior to the 2010 amendments was lawful, such that she retained a grandfathered right to continue that use after the amendments. The County appealed to the Georgia Supreme Court, which unanimously affirmed the trial court's ruling that the old zoning ordinance was void for vagueness as applied to May's use of her property for weekly rentals. *May v. Morgan Cnty. (May II)*, 824 S.E.2d 365 (Ga. 2019). The court explained that the County's interpretation of the old ordinance—"[t]hat May would have been allowed to rent her house for a month but criminally prosecuted for renting it for a week"—"was nowhere to be found in the text of the old ordinance" and would not have been apparent to a person of ordinary intelligence. *Id.* at 367–68. Accordingly, May's criminal citation for violating the amended ordinance was dismissed.

## II.

In September 2019, May filed the present lawsuit under 42 U.S.C. § 1983 against the County in federal court.[2] She alleged that

---

[2] May also brought 42 U.S.C. § 1983 claims against several individuals, and she asserted a state-law claim of malicious prosecution. The district court granted judgment on the pleadings for the defendants on those claims, and May does not appeal that ruling.

the County had maliciously prosecuted her and had her jailed "for violating a zoning ordinance that did not even apply to her."

The district court granted summary judgment to the County. The court found that May's detention after a conviction, based on a mistake of law by the trial judge, did not implicate the Fourth Amendment's prohibition against unreasonable seizures. And even if the jailing amounted to a Fourth Amendment seizure, the court continued, May did not establish that the County was the "moving force" behind that seizure. The court explained that, despite the code-enforcement proceeding, May was never arrested or detained by a County official before her conviction, and that public officials, absent evidence of misconduct like lying to or bribing the judge, are "not liable for a Fourth Amendment seizure based on the intervening acts of a judge who convicts and sentences a suspect." The court did not address whether probable cause supported the prosecution.

## III.

We review the district court's grant of summary judgment *de novo*, construing the evidence and drawing all reasonable inferences in favor of May, the non-moving party. *Washington v. Howard*, 25 F.4th 891, 897 (11th Cir. 2022). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In other words, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial," and summary judgment

may be granted. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (quotation marks omitted). We may affirm on any ground supported by the record, even if the district court did not address it. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1251–52 & n.5 (11th Cir. 2013).

## IV.

"A constitutional claim brought pursuant to § 1983 must begin with the identification of a specific constitutional right that has allegedly been infringed." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019). May claims that the County violated her Fourth Amendment rights by maliciously prosecuting her based on a zoning ordinance that, as the Georgia Supreme Court later recognized, did not apply to her.

We use "malicious prosecution" only as "a shorthand way of describing certain claims of unlawful seizure under the Fourth Amendment"—that is, seizures pursuant to legal process. *Williams v. Aguirre*, 965 F.3d 1147, 1157–58 (11th Cir. 2020) (quotation marks omitted). For this claim, May must prove both "a violation of her Fourth Amendment right to be free of unreasonable seizures" and "the elements of the common law tort of malicious prosecution." *Paez*, 915 F.3d at 1285 (quotation marks omitted). To establish the common-law elements of malicious prosecution, a plaintiff must prove that the defendant "instituted or continued a criminal prosecution against [her], with malice and without probable cause, that terminated in [her] favor and caused damage to [her]." *Williams*, 965 F.3d at 1157 (quotation marks omitted).

One of the Fourth Amendment's protections is "the right to be free from arrest without probable cause." *Barnett v. MacArthur*, 956 F.3d 1291, 1296 (11th Cir. 2020). A Fourth Amendment violation involving seizures pursuant to legal process "occurs when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Williams*, 965 F.3d at 1158 (quotation marks omitted). "In these situations, legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause requirement." *Id.* (cleaned up). However, "the existence of probable cause defeats a § 1983 malicious prosecution claim." *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010).

In addition to proving the elements of malicious prosecution under § 1983, May must prove causation. In particular, she must show that the County, "through its deliberate conduct, . . . was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

Although the district court did not directly address the issue, we affirm on the ground that probable cause supported the prosecution against May, even assuming she was subject to a Fourth Amendment seizure that was caused by the County.[3] *See Feliciano*, 707 F.3d at 1251–52 & n.5. Because probable cause supported

---

[3] For that reason, we need not and do not consider whether her detention pursuant to a conviction was a Fourth Amendment seizure or whether the County was a moving force behind the alleged injury.

the prosecution, May has not established a violation of her Fourth Amendment rights, which is an essential element of her § 1983 malicious-prosecution claim.

## A.

May argues that the prosecution against her was not supported by probable cause because she "was not ever subject to the ordinance." In her view, when evaluating probable cause for municipal liability—as opposed to individual liability, which is subject to qualified immunity—we must apply current law rather than the law in effect at the time of the allegedly wrongful conduct. If we apply that law—specifically the Georgia Supreme Court's 2019 decision in her criminal case—it's clear that the amended zoning ordinance under which she was charged and convicted does not apply to her. *See May II*, 824 S.E.2d at 369.

Unlike individual defendants, municipalities cannot assert qualified immunity as a defense to suit under § 1983. *Owen v. City of Independence*, 445 U.S. 622, 650–51 (1980). So a municipality may be liable for a constitutional violation even if it acted reasonably or in good faith. *Id.* Without the protection of a good-faith defense, the Supreme Court reasoned, "officials who may harbor doubts about the lawfulness of their intended actions" may be more likely "to err on the side of protecting citizens' constitutional rights" and "to minimize the likelihood of unintentional infringements on constitutional rights." *Id.* at 652.

Our decision in *Cooper v. Dillon* illustrates how the lack of qualified immunity may affect municipal liability.  There, the editor and publisher of a weekly newspaper sued after he was arrested for violating a law that prohibited the disclosure of information obtained as a participant in an internal law enforcement investigation.  403 F.3d 1208, 1212–13 (11th Cir. 2005).  After concluding that the law violated the First Amendment as an impermissible content-based restriction on speech, we turned to the question of liability for that constitutional injury.  *Id.* at 1219.  We held that the officer was not liable in his individual capacity due to qualified immunity, because "[a]t the time of Cooper's arrest, the statute had not been declared unconstitutional, and therefore it could not have been apparent to [the officer] that he was violating Cooper's constitutional rights."  *Id.* at 1220.  But that same officer was liable in his official capacity as a policymaker for the city, we explained, because his decision to enforce the law caused a constitutional deprivation.  *Id.* at 1222–23.  Put differently, we held that the city was liable even though the law "had not been declared unconstitutional" until *Cooper* itself was decided.  *See id.* at 1220.

May's attempt to analogize this case to *Cooper* is unpersuasive, despite some facial similarities.  As we noted above, our analysis must be guided by the "specific constitutional right that has allegedly been infringed."  *Paez*, 915 F.3d at 1285.  In *Cooper*, our conclusion that the law at issue violated the First Amendment as an impermissible content-based restriction on speech meant that the plaintiff's free-speech rights were violated when he was

arrested under that law. *See* 403 F.3d at 1219–23. Because there is no good-faith exception for municipal liability, it made sense to hold the city liable for that constitutional violation even though the law had not been declared unconstitutional at the time of arrest. *See Owen*, 445 U.S. at 650–52.

Here, though, May's claim is based on an allegedly unreasonable seizure under the Fourth Amendment—that is, she asserts that the prosecution against her was not supported by probable cause. The Georgia Supreme Court's ruling in 2019 that the old zoning ordinance was unconstitutionally vague under the due process clause, such that the amended zoning ordinance did not apply to her, does not, by itself, establish a violation of May's rights under the Fourth Amendment.[4] Rather, that ruling matters only insofar as it affects the assessment of probable cause.

The short answer is, it doesn't. Contrary to May's view, we assess probable cause without the benefit of hindsight. *See Washington*, 25 F.4th at 904 ("The Fourth Amendment does not have that special feature known as hindsight." (quoting *United States v. Robinson*, 535 F.2d 881, 884 (5th Cir. 1976))). "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" *Heien v. North Carolina*, 574 U.S. 54, 60–66 (2014). As a result, according

---

[4] We note it's unclear whether the Georgia Supreme Court applied state or federal law, or both. But in any event, a violation of federal-due-process guarantees does not necessarily equate to a violation of rights protected by the Fourth Amendment.

to the Supreme Court, "the Fourth Amendment allows for some mistakes on the part of government officials." *Id.* at 60–61. In particular, probable cause or reasonable suspicion can rest on objectively reasonable mistakes of fact or law.[5] *Id.* at 60–61, 65–66 ("The Fourth Amendment tolerates only *reasonable* mistakes, and those mistakes—whether of fact or of law—must be *objectively* reasonable."). So when a "mistake of law relates to the antecedent question of whether it was reasonable for an officer to suspect that the defendant's conduct was illegal," "there [is] no violation of the Fourth Amendment in the first place." *Id.* at 66.

Without directly addressing *Heien*, May maintains that the Supreme Court's decision in *Owen* controls and that, under it, we must apply the Georgia Supreme Court's 2019 ruling when addressing the existence of probable cause for her earlier prosecution and detention. We disagree. *Owen* teaches that, once a constitutional violation is established, a municipality cannot avoid liability by claiming that its officials acted reasonably or in good faith. *See Owen*, 445 U.S. at 650–51. But *Heien* prescribes the analysis we use to determine whether there was an unreasonable seizure, and

---

[5] The Supreme Court noted that, in *Michigan v. DeFillippo*, 443 U.S. 31, 64 (1979), it had held that a search was reasonable and therefore constitutional even though DeFillipo "could not be prosecuted under the identification ordinance," which was found to be unconstitutional after his arrest and search. *Heien v. North Carolina*, 574 U.S. 54, 63–65 (2014).

therefore a Fourth Amendment violation, "in the first place."[6] *Heien*, 574 U.S. at 66. And under *Heien*, an objectively reasonable but ultimately mistaken view of the law does not undermine the existence of probable cause or otherwise establish a violation of the Fourth Amendment's prohibition on unreasonable seizures. *See id.* While that inquiry may overlap to some degree with the qualified-immunity inquiry for individual liability, as May suggests, *Heien* makes clear that the inquiries are "distinct." *Id.* at 67.

For these reasons, May cannot prove that her prosecution was unreasonable based solely on the fact that the amended zoning ordinance was later found not to apply to her. *See May II*, 824 S.E.2d at 367–68. Rather, to defeat the existence of probable cause for her prosecution, she must show that the County officials' view of the law was not only mistaken but objectively unreasonable. *See Heien*, 574 U.S. at 66.

**B.**

May has made no effort to do so on appeal in the argument sections of her briefing, despite the County's direct arguments on this point. So she has abandoned the issue. *See Sapuppo v. Allstate*

---

[6] May cites *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986), for the proposition that *Owen* applies in the Fourth Amendment context. But in *Pembaur*, the city had conceded that the later-decided Supreme Court opinion applied retroactively in that case. *Id.* at 477 n.5. Even without that concession, though, *Pembaur* is not on point because the Fourth Amendment issue concerned whether a warrant was required to enter a third party's premises to execute an arrest warrant, not the reasonableness of a seizure. *See id.* at 474 & 477 n.5.

*Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Nor can we say that the record would support a finding that the County's view of the law was objectively unreasonable. May's conduct facially violated the amended zoning ordinance, the general validity of which is not in dispute. While May raised an (ultimately valid) affirmative defense to prosecution based on grandfathered rights and vagueness, *May v. Morgan Cnty.*, 878 F.3d 1001, 1003–04 nn. 3 & 4 (11th Cir. 2017), affirmative defenses usually do not "vitiate probable cause," *Paez*, 915 F.3d at 1286.

Plus, the state trial judges reached conflicting views about whether the pre-2010 zoning ordinance prohibited short-term rentals, and the Georgia Court of Appeals eventually sided with the County. That same court in 2017 recognized that the vagueness issue was by no means an easy one. *See May*, 807 S.E.2d at 32. May also offers no evidence of fraud or false statements by County officials. *See Williams*, 965 F.3d at 1158. Despite evidence that the County doubted whether the pre-2010 ordinance could support a prosecution for short-term renting, we are not persuaded that it was objectively unreasonable for the County to believe that May was subject to prosecution under the amended zoning ordinance, notwithstanding her assertion of grandfathered rights.

In sum, May has not shown that the prosecution against her was initiated or maintained without probable cause. She therefore

has not established a violation of her Fourth Amendment right against unreasonable seizures. *See Williams*, 965 F.3d at 1157–58. And without proof of that element, she cannot prevail on her § 1983 claim of malicious prosecution. *See Paez*, 915 F.3d at 1285; *Grider*, 618 F.3d at 1256 ("[T]he existence of probable cause defeats a § 1983 malicious prosecution claim."). We therefore affirm the district court's decision to grant summary judgment to the County.

## V.

May also argues that that neither the County nor the district court addressed the claims she raised under the Fourteenth Amendment. She does not identify with any precision what those claims were, however. In any case, we decline to consider any independent Fourteenth Amendment claim because the only claim May raised at summary judgment was her § 1983 claim for malicious prosecution.

It is well established "that arguments not raised at the district court level will generally not be considered on appeal," including "grounds alleged in the complaint but not relied upon in summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 598–99 (11th Cir. 1995) (*en banc*). That's because "[i]n opposing a motion for summary judgment, a party may not rely on [her] pleading to avoid judgment" and must instead formulate the arguments she wants the district court to consider. *Id.* at 599. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Id.* Grounds not raised by a plaintiff in

opposing a motion for summary judgment are "deemed abandoned." *Id.*

In moving for summary judgment, the County asserted that May's sole claim was for malicious prosecution under the Fourth Amendment and sought dismissal of her entire complaint. That was a reasonable construction of her complaint because she cited the Fourteenth Amendment in the context of her § 1983 malicious-prosecution claim, which we have said is a type of Fourth Amendment claim, and the Fourteenth Amendment is how the Fourth Amendment applies to the States. *See, e.g.*, *Torres v. Madrid*, 141 S. Ct. 989, 997 (2021) (noting that the Fourteenth Amendment "incorporated the protections of the Fourth Amendment against the States").

May, however, in her own motion for summary judgment and her response opposing the County's motion, did not raise any independent claim or argument under the Fourteenth Amendment. Rather, her briefing raised only a § 1983 malicious-prosecution claim. As a result, she abandoned any other claims she may have had. *See Resolution Trust*, 43 F.3d at 598–99. And given May's failure to develop a Fourteenth Amendment claim with any clarity on appeal, this is not a case "where refusal to consider it would result in a miscarriage of justice." *Id.* Accordingly, we decline to consider any claim beyond the Fourth Amendment claim for malicious prosecution we have addressed above.

## VI.

In sum, we affirm the district court's judgment in favor of the County on May's § 1983 claim of malicious prosecution.

**AFFIRMED.**