[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-14076

_____

DAVID TEALER,

Plaintiff-Appellant,

*versus*

R. BYARS,
A. CATLIN,
B. DANNER,

Defendants- Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:22-cv-00968-LMM

_____

Before ROSENBAUM, ABUDU, and WILSON, Circuit Judges.

PER CURIAM:

This appeal requires us to consider whether the district court properly granted qualified immunity to three police officers who were involved in securing a warrant for the arrest of Plaintiff-Appellant David Tealer.  Under the warrant, the officers arrested Tealer for false imprisonment, battery visible harm, and pointing a pistol.  Later, the district attorney dismissed the charges against Tealer.

Tealer sued Defendants-Appellees Officer Robert Byars, Assistant Chief Antonio Catlin, and Officer Bryan Danner ("Officers")—the Officers involved in securing his arrest warrant—and, as relevant here, alleged a claim under 42 U.S.C. § 1983 for malicious prosecution under the Fourth Amendment.  The district court dismissed the federal claim and the case.  For the reasons stated below, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND

### A.    *Facts*[1]

_____

[1] Because this appeal is before us on an order on a motion to dismiss, we accept as true for purposes of our review the allegations set forth in David Tealer's

On the afternoon of March 8, 2020, Donna Tealer ("Donna")[2] was at her son David Tealer's home. Using a Ring camera application on her cell phone, Donna observed two white vans parked in her driveway. Tealer suspected a burglary and feared for the safety of his ninety-two-year-old grandmother, who was alone at the house.

Tealer advised his mother to call 911 and request an officer to respond. In the meantime, Tealer drove his mother to her house. While Tealer drove, Donna remained on the call with 911 and continued watching the Ring camera's live footage on her phone. She advised 911 that one of the white vans left her driveway while the other remained. She also told the dispatcher that she saw a man in a blue shirt retrieve a ladder and climb onto the roof of her home. Donna supposed that the man might be stealing her satellite dish or attempting to enter the rear of her home.

When the Tealers arrived at Donna's house, Tealer, who was an off-duty P.O.S.T. certified officer with the South Fulton Police Department and was armed, observed the man in the blue shirt, Carlos Santos-Mendez, on the roof of the home. Believing a burglary was in progress, Tealer drew his firearm, identified

---

Amended Complaint and the attachments thereto, and we make all reasonable inferences in Tealer's favor. *See Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003). For this reason, the actual facts may or may not be as presented.

[2] To avoid confusion between Appellant David Tealer and his mother Donna Tealer, we refer to David Tealer as "Tealer" and to Donna Tealer as "Donna."

4                     Opinion of the Court                     22-14076

himself as law enforcement, and ordered Santos-Mendez to come down from the roof and get on the ground.

Santos-Mendez came down from the roof but did not lie down on the ground. Instead, he initiated a brief struggle. Tealer holstered his gun and forced Santos-Mendez to the ground, where he continued holding him until the police arrived.

But before the police arrived, while Santos-Mendez was on the ground, he explained that he was employed to work on the roof. Santos-Mendez also received a call from "Mr. Scott" whom he identified as his "boss." Mr. Scott spoke to Tealer and told Tealer he was on his way to the house. When Mr. Scott got there, he said that he contracted with Donna to perform work on her roof. So that day, Mr. Scott continued, he had sent Santos-Mendez to perform the work, but he hadn't told Donna to expect roofers. Even after Mr. Scott arrived and corroborated Santos-Mendez's story, Tealer continued to detain Santos-Mendez.

A little while later, two officers from the DeKalb County Police Department arrived at Donna's house, and the Tealers turned Santos-Mendez over to them. The officers interviewed everyone on the scene. During his interview, Tealer explained that he believed Santos-Mendez was a possible burglar, he announced himself as "Police," and he gave Santos-Mendez orders to get on the ground.

Santos-Mendez admitted that Tealer had identified himself as a police officer and ordered him to come down from the roof. But Santos-Mendez said that he did not comply with Tealer's order

to lie down because Tealer was not in uniform.  The responding officers determined that the incident arose from a misunderstanding and allowed everyone to leave the scene.

One of the officers completed an incident report that identified Tealer as "the suspect" and Santos-Mendez as "the victim."

Officers Byars and Danner later interviewed Tealer about the incident.  Tealer said he believed Santos-Mendez was a potential burglar, that he identified himself to Santos-Mendez as a police officer, and that he considered himself to be "operating under the color of law and within the lawful duties of an Officer" even though he was off-duty and outside his jurisdiction at the time of the incident.

After that, Assistant Chief Catlin advised Donna that Officer Byars was going to apply for an arrest warrant against Tealer. Tealer alleges that Officer Byars first applied for an arrest warrant from a Georgia superior court, but the superior court denied Byars's warrant application.  He also asserts that Officers Byars and Danner, and Assistant Chief Catlin all understood that they could not secure a lawful warrant for Tealer's arrest from a magistrate judge. Still, after the superior court denied the warrant application, Officer Byars obtained a warrant for Tealer's arrest from a DeKalb County magistrate judge.  The warrant charged Tealer with false imprisonment, battery visible harm, and pointing a pistol.

Tealer alleges that Officer Byars obtained the warrant by intentionally omitting material evidence from the warrant affidavit and only after a superior court judge refused to issue the warrant.

In particular, Tealer asserts that, in his application to the magistrate judge, Officer Byars never mentioned that Tealer believed Santos-Mendez was a possible burglar, that he identified himself as a police officer when he ordered Santos-Mendez to come down from the roof, and that he believed Santos-Mendez committed criminal trespass by ignoring Donna's demands that Santos-Mendez leave her property. In Tealer's view, had this information been included in the affidavit, no warrant for his arrest would have been issued.

Law enforcement arrested Tealer on the warrant for false imprisonment, battery visible harm, and pointing a pistol. As a result, the Georgia P.O.S.T. Council initiated an investigation in reference to Tealer's P.O.S.T. certification. The South Fulton Police Department also placed Tealer on administrative work status until it completed an internal-affairs investigation on the incident. The DeKalb County District Attorney's Office later dismissed the charges against Tealer.

### B.    Procedural History

After the district attorney dropped the charges, Tealer sued Officers Byars and Danner, and Assistant Chief Catlin. In his Amended Complaint, as relevant here, Tealer set forth a Fourth Amendment claim under § 1983 for malicious prosecution.

Officers Byars and Danner, along with Assistant Chief Catlin collectively moved to dismiss Tealer's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). In their motion, they argued that they were entitled to qualified immunity on Tealer's § 1983 claim. The Officers attached to their motion to dismiss a

copy of the warrant affidavit that Officer Byars submitted to the magistrate judge.

Tealer opposed the motion to dismiss and attached a copy of the warrant affidavit that Officer Byars allegedly submitted to the Georgia superior court.

In resolving the motion to dismiss, the district court considered Officer Byars's warrant affidavit to the magistrate judge but not his alleged affidavit to the superior court or the description of the superior-court affidavit Tealer included in his response to the motion to dismiss. The district court did this for three reasons: (1) Tealer didn't reference or attach the superior-court affidavit to his Amended Complaint; (2) the Officers disputed the authenticity of the alleged affidavit Tealer filed; and (3) Tealer's description of the superior-court affidavit added new allegations that were not contained in his Amended Complaint. On the other hand, the district court considered Officer Byars's affidavit to the magistrate judge because Tealer referenced the affidavit in his Amended Complaint, the affidavit was central to Tealer's § 1983 claim, Tealer did not dispute the affidavit's contents, and the Officers attached the affidavit to their motion to dismiss.

Ultimately, the district court concluded that the Officers were entitled to qualified immunity and dismissed Tealer's § 1983 malicious-prosecution claim (and the lawsuit). Tealer now appeals.

## II.    STANDARDS OF REVIEW

"We review de novo a district court's decision to grant or deny the defense of qualified immunity on a motion to dismiss, accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (citing *Chesser v. Sparks*, 248 F.3d 1117, 1121 (11th Cir. 2001)). We also review de novo a district court's grant of a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *Baker v. City of Madison,* 67 F.4th 1268, 1276 (11th Cir. 2023). In conducting our review, we accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Paez v. Mulvey*, 915 F.3d 1276, 1284 (11th Cir. 2019).

## III.    ANALYSIS

On appeal, Tealer raises two issues. First, he challenges the district court's refusal to consider the superior-court warrant affidavit. And second, he asserts that the district court erred in dismissing his malicious-prosecution claim based on qualified-immunity grounds. We address each issue in turn.

### A.    *The district court did not err in declining to consider the alleged superior-court warrant affidavit.*

Tealer first argues that the district court erred when it refused to consider the superior-court warrant affidavit because the affidavit was not attached to the Amended Complaint. He also says the district court erred in refusing to consider his discussion of the superior-court warrant affidavit because that discussion clarified the allegations in his Amended Complaint. We disagree.

For starters, Tealer does not challenge the district court's reason for excluding the superior-court warrant affidavit based on the Officers' contention that the affidavit was not authentic. That is fatal to Tealer's appeal on the district court's decision not to consider the affidavit. As we've explained, when the district court's decision "is based on multiple, independent grounds, an appellant must convince us that every stated ground" is incorrect. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

But even if we were to look past that deficiency in Tealer's appeal, the district court did not err.

At the motion-to-dismiss stage, a court "generally may not consider matters outside of the pleadings without treating the motion as a motion for summary judgment[.]" *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024) (citing Fed. R. Civ. P. 12(d)). Two exceptions to this rule exist. District courts may consider documents that the complaint incorporates by reference, and they may consider documents outside the complaint to the extent they are matters courts may take judicial notice of. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Under the "incorporation by reference" doctrine, a court can consider documents not attached to or referred to in a complaint if they meet two requirements: they are "central to the plaintiff's claims," and the authenticity of the documents is not disputed. *Johnson*, 107 F.4th at 1300.

As we've mentioned, Tealer attached the warrant affidavit that Officer Byars allegedly submitted to the superior court, to his

response to the Officers' motion to dismiss.  In granting the Officers' motion to dismiss, the district court declined to consider this affidavit.  We conclude the district court did not err in its decision.

First, the Officers disputed the authenticity of the superior-court affidavit.  As a result, Tealer failed to establish the first exception to the rule that we don't consider documents outside the complaint on a motion to dismiss.  *See Tellabs, Inc.*, 551 U.S. at 322; *Johnson*, 107 F.4th at 1300.  So the district court did not err when it declined to consider the alleged superior-court affidavit under the "incorporation by reference" exception.  *See id.*

For similar reasons, nor did the district court err when it did not take judicial notice of the alleged superior-court affidavit: Tealer failed to authenticate it.  Public records can be authenticated with evidence that the document "was recorded or filed in a public office as authorized by law;" or that it "is from the office where items of this kind are kept."  Fed. R. Evid. 901(b)(7).  But Tealer never established that the document was ever publicly filed.  *U.S. ex rel. Osheroff v. Humana Inc.,* 776 F.3d 805, 812 n.4 (11th Cir. 2015) (noting that courts may take judicial notice of publicly filed documents at the Rule 12(b)(6) stage).  And he gave the district court no way to establish that the document was what Tealer claimed it was: an affidavit and application for an arrest warrant that was actually submitted to the superior court and denied before the magistrate judge issued a warrant in the underlying matter.  Indeed, the document didn't even contain signatures or identify the judge who Officer Byars allegedly presented it to.

And if the district court didn't err in declining to consider the alleged superior-court affidavit itself, it certainly didn't err when it decided not to consider Tealer's characterization of that affidavit, which was even one step further removed from an authenticated document. Not only that, but assertions of alleged "facts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.'" *Dorman v. Aronofsky*, 36 F.4th 1306, 1317 (11th Cir. 2022) (quoting *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016) (citation omitted)). And a plaintiff may not amend his complaint through a response to a motion to dismiss. *Id.* at 1317. In short, the district court did not err when it declined to consider Tealer's description of the superior-court affidavit.

B.    *The district court did not err in dismissing Tealer's malicious-prosecution claim on qualified-immunity grounds.*

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Tealer contends that the Officers violated his right under the Fourth Amendment to be free from an unreasonable seizure by engaging in a malicious prosecution of him.

Malicious-prosecution claims are claims of unlawful seizure when legal process occurs. *Williams v. Aguirre*, 965 F.3d 1147, 1157–58 (11th Cir. 2020). A Fourth Amendment violation happens if the "legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police

officer's false statements." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). To establish this type of claim, Tealer must show "(1) that the defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process and (2) that the criminal proceedings against him terminated in his favor." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020).

There's no question Tealer has satisfied the second element. Tealer alleges malicious prosecution arising from all three offenses lodged against him. Because the district attorney dismissed all charges, those proceedings terminated in his favor.

So we consider whether Tealer has alleged enough facts to establish the first element: "that the legal process justifying his seizure was constitutionally infirm" and "that his seizure would not otherwise be justified without legal process." *Williams*, 965 F.3d at 1165. The legal process justifying a seizure is constitutionally infirm if "the officer who applied for the warrant should have known that his application failed to establish probable cause" or "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Id.* A misstatement or omission does not violate the Fourth Amendment if it is immaterial. That is, even if a misstatement or omission occurs, if probable cause would still exist "if the offending statement was removed or the omitted information included," the misstatement or omission is not material. *Paez*, 915 F.3d at 1287. And if no omission or misstatement is

material, a plaintiff cannot show that a malicious prosecution has occurred.

Tealer argues that Officer Byars violated the Fourth Amendment in two ways: (1) by intentionally omitting and misrepresenting material information from the warrant affidavit submitted to the magistrate judge; and (2) by securing an arrest warrant from a magistrate judge who did not have authority to issue the warrant. Tealer also asserts that Assistant Chief Catlin is liable as Officer Byars's supervisor and for failing to intervene in Byars's acquisition of the arrest warrant. Finally, Tealer contends that Officer Danner is likewise liable for failing to intervene in Byars's acquisition of the arrest warrant.

We are not persuaded. Rather, we conclude that qualified immunity bars Tealer's claims.

1.      The Doctrine of Qualified Immunity

Qualified immunity protects police officers from suit in their individual capacities for discretionary actions they have performed in the course of their duties. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). This protection shields officials from suit if their conduct does not violate a clearly established statutory or constitutional right of which a reasonable officer would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Qualified immunity is intended to balance the need for official accountability with the need to permit officials to engage in their discretionary duties without fear of personal liability or harassing litigation. *Pearson*, 555 U.S. at 231; *Durruthy v. Pastor*, 351

F.3d 1080, 1087 (11th Cir. 2003).  Qualified immunity protects from litigation "all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation and internal quotation marks omitted).  It's intended to "liberate[] government agents from the need to constantly err on the side of caution by protecting them both from liability and the other burdens of litigation, including discovery." *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003) (citation and internal quotation marks omitted).

To obtain qualified immunity, an officer must first show he was acting within the scope of his discretionary authority when he engaged in the challenged conduct.  *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).  If the defendant makes this showing, the plaintiff "bears the burden of proving both that the defendant violated his constitutional right and that 'the right was clearly established at the time of the violation.'"  *Washington v. Howard*, 25 F.4th 891, 897–98 (11th Cir. 2022) (quoting *Barnes v. Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012)).

The court will not always have to analyze both steps; if no constitutional violation occurs, "the inquiry ends there." *Robinson v. Arrugueta*, 415 F.3d 1252, 1255 (11th Cir. 2005).  The court also need not take the steps in any particular order.  Rather, the court may "exercise [its] sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236.  And because qualified immunity can be a defense from suit—not just liability—"it is 'important for

a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" *Lee*, 284 F.3d at 1194 (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998) (citation omitted)).

Clearly established law is law that "makes it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue." *Gates v. Khokhar*, 884 F.3d 1290, 1297 (11th Cir. 2018) (alteration adopted) (quoting *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010) (per curiam)). For the law to be clearly established, "existing law must have placed the constitutionality of the officer's conduct 'beyond debate.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* The contours of a clearly established rule are "so well defined" that a reasonable officer would clearly understand "that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). This requires a "high 'degree of specificity'" that is "especially important in the Fourth Amendment context." *Id.* at 63–64 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

In the Eleventh Circuit, only United States Supreme Court precedent, published Eleventh Circuit precedent, and relevant Georgia Supreme Court precedent can clearly establish law. *Bradley v. Benton*, 10 F.4th 1232, 1242–43 (11th Cir. 2021). Because an

unpublished opinion is "not binding precedent," *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013), it cannot clearly establish the law. *Crocker v. Beatty*, 995 F.3d 1232, 1241 n.6 (11th Cir. 2021).

Here, the district court concluded that the Officers were performing discretionary functions when they obtained the arrest warrant. Then the district court went on to conclude that the Officers were entitled to qualified immunity because their conduct did not violate clearly established law.

For the first time on appeal, Tealer argues that the district court erred in concluding that the Officers satisfied their burden to show they were acting within the scope of their discretionary authority. We generally won't consider an issue an appellant raises for the first time on appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004). And none of the exceptions to this rule apply here.[3]

---

[3] This general rule has five exceptions. We can consider an issue not raised at the district court level if (1) the issue involves a pure question of law; (2) the party had no opportunity to raise the issue at the district court level; (3) the interest of substantial justice is at stake; (4) the proper resolution is beyond any doubt; or (5) the issue presents significant questions of general impact or of great public concern. *Access Now*, 385 F.3d at 1331*; Ramirez v. Sec'y, U.S. Dep't of Transp.*, 686 F.3d 1239, 1250 (11th Cir. 2012). None of these exceptions apply here, so we will not consider Tealer's argument that the Officers were not acting in their discretionary authority. *Access Now*, 385 F.3d at 1331; *Albra v. Advan, Inc.*, 490 F.3d 826, 828 n.1 (11th Cir. 2007) (per curiam) ("'[A]rguments not presented in the district court will not be considered for the first time on appeal.'"

But even if we were to address this argument, it would fail. Officers act within the scope of their discretionary authority when they respond to a scene, investigate a matter, and secure an arrest warrant. *See Hunter v. City of Leeds,* 941 F.3d 1265, 1278 n.16 (11th Cir. 2019) ("The pursuit and apprehension of suspected criminals is a core discretionary function of the police.") And even if Officer Byars improperly sought the arrest warrant from a magistrate judge, arguably he was still acting within his discretionary authority when he did so. Indeed, "in determining whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures *in general* is a part of his job-related powers and responsibilities." *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

We therefore proceed to the next step of the qualified-immunity inquiry: whether the Officers violated Tealer's clearly established constitutional rights.

2.      Claims Against Officer Byars

As a reminder, Tealer asserts that Officer Byars violated the Fourth Amendment in two ways: (1) by intentionally omitting and misrepresenting material information from the warrant affidavit he

---

(quoting *Sterling Fin. Inv. Grp., Inc. v. Hammer,* 393 F.3d 1223, 1226 (11th Cir. 2004)).

submitted to the magistrate judge and (2) by securing an arrest warrant from a magistrate judge who did not have authority to issue the warrant.

### a. Officer Byars did not misrepresent or omit material information in or from the arrest affidavit.

Tealer first argues that the warrant affidavit that Officer Byars submitted to the magistrate judge contained intentional, material omissions that violate clearly established law. We disagree.

We use a two-part test to determine whether a misstatement or omission in an officer's warrant affidavit violates the Fourth Amendment. "First, we ask whether there was an intentional or reckless misstatement or omission." *Paez*, 915 F.3d at 1287 (citing *United States v. Kirk*, 781 F.2d 1498, 1502 (11th Cir. 1986)). If so, we determine whether the misstatement or omission was material by considering whether the omission or correction of the misstatement or the addition of the omitted statement would undermine probable cause. *Id.* An officer is entitled to qualified immunity if his warrant affidavit would still support arguable probable cause even after the misstatements were corrected or the omissions were added. *See id.* at 1287–88; *Grider v. City of Auburn*, 618 F.3d 1240, 1257 n.25 (11th Cir. 2010).

At the motion-to-dismiss stage, we assume the truth of Tealer's factual allegation that the alleged omissions and misrepresentations were intentional. *See Dalrymple*, 334 F.3d at 994. But we need not credit Tealer's legal conclusions—that is, that they were material. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). We evaluate

that for ourselves. And here, even assuming Officer Byars misrepresented or omitted information in or from the affidavit, that information was not material because the remaining and corrected information still would have established probable cause.

"Probable cause 'is not a high bar.'" *Wesby*, 583 U.S. at 57 (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). Probable cause "does not require anything close to conclusive proof or proof beyond a reasonable doubt . . . , or even a finding made by a preponderance of the evidence." *Paez*, 915 F.3d at 1286. Instead, "probable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington*, 25 F.4th at 898–99 (quoting *Wesby*, 583 U.S. at 57). In a malicious-prosecution case, we ask "whether the judicial officer who made the probable-cause determination had sufficient, truthful information to establish probable cause." *Williams*, 965 F.3d at 1163.

Here, the warrant affidavit that Officer Byars submitted to the magistrate judge asserted Tealer had committed three crimes under Georgia law: False Imprisonment, Georgia Code § 16-5-41; Pointing a Pistol, Georgia Code § 16-11-102; and Battery Visible Harm, Georgia Code § 16-5-23.1. Under Georgia law, a "person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." Ga. Code § 16-5-41(a). Next, a "person is guilty of a misdemeanor when he intentionally and

without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded." Ga. Code § 16-11-102. And finally, "[a] person commits the offense of battery when he or she intentionally causes substantial physical harm or visible bodily harm to another." Ga. Code § 16-5-23.1(a).

Tealer admits in his Amended Complaint that he physically detained Santos-Mendez until officers arrived, pointed a firearm at Santos-Mendez, and physically forced Santos-Mendez to the ground during the altercation. The warrant affidavit that Officer Byars submitted to the magistrate judge corroborates this account.

Tealer contends that the warrant affidavit was deficient because Officer Byars allegedly intentionally omitted facts that would have vitiated probable cause if the magistrate judge knew of them. According to Tealer, the warrant affidavit omitted three material facts: (1) Tealer believed that Santos-Mendez was a burglar and that a burglary was in progress; (2) Tealer identified himself as law enforcement when he ordered Santos-Mendez to come down from the roof; and (3) Tealer believed that Santos-Mendez had trespassed when he ignored Donna's demands to leave her property.[4]

---

[4] In his Initial Brief, Tealer adds to this list, complaining that Officer Byars changed the warrant application presented to the magistrate judge from the one presented to the superior-court judge. He also claims for the first time on appeal that the warrant application presented to the magistrate judge omitted various other facts besides those we discuss in this opinion. Even if these arguments were properly before us—they aren't because these allegations appear nowhere in the Amended Complaint and because, in the case of the alleged omissions newly raised on appeal for the first time, because Tealer did

None of these omissions were material.

(1)

We start with Officer Byars's omission of the fact that Tealer thought Santos-Mendez was a burglar. Even if Tealer believed Santos-Mendez was a burglar, he still did not release him when he found out Santos-Mendez was not a burglar but worked for Mr. Scott and was there to fix the roof. In fact, under Tealer's own version of the facts, while Santos-Mendez was held on the ground, Santos-Mendez identified the person he was speaking to on the phone—Mr. Scott—as his boss. And Mr. Scott explicitly informed the Tealers that Santos-Mendez was his subcontractor when he arrived at Donna's house. Despite this, Tealer held Santos-Mendez down until law enforcement arrived—some 10–15 minutes after Mr. Scott arrived at Donna's home and told Tealer information that refuted Tealer's alleged belief that Santos-Mendez was a burglar.

And in any case, Tealer's incorrect belief that Santos-Mendez was a burglar does not undermine the fact that he detained Santos-Mendez. Rather, at best, Tealer's misunderstanding relates to the mistake-of-fact defense under Georgia law. *See* Ga. Code § 16-3-5. But affirmative defenses don't usually undermine

_____

not raise them in the district court—whether the affidavit Officer Byars submitted differed from one he allegedly submitted to the superior-court judge is irrelevant if the affidavit Officer Byars submitted to the magistrate judge established probable cause and contained no material misrepresentations or omissions. And as we explain, that was the case here.

probable cause. *Paez*, 915 F.3d at 1286, 1289–90; *see, e.g.*, *Morris v. Town of Lexington*, 748 F.3d 1316, 1325 (11th Cir. 2014); *Jordan v. Mosley*, 487 F.3d 1350, 1356–57 (11th Cir. 2007). "Indeed, arresting officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed." *Paez*, 915 F.3d at 1286 (quoting *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002)).

Probable cause does not require "convincing proof" or "proof beyond a reasonable doubt." *See Manners v. Cannella*, 891 F.3d 959, 968 (11th Cir. 2018). Nor is an officer "required to resolve every inconsistency found in the evidence." *Paez*, 915 F.3d at 1286. Officers aren't lawyers, so we "do not expect them to resolve legal questions or to weigh the viability of most affirmative defenses." *Id.* (citing *Williams v. City of Albany*, 936 F.2d 1256, 1260 (11th Cir. 1991) (per curiam)). And the Officers here did not have a duty to resolve this legal question before seeking Tealer's arrest. The mistake-of-fact defense does not undermine probable cause. *See Jordan*, 487 F.3d at 1357 (stating that, "[u]nder the law of probable cause, no police officer had a duty to resolve" a potential affirmative defense "before seeking out Plaintiff's arrest").

(2)

We next consider the allegation that Officer Byars failed to mention in his affidavit that Tealer identified himself as a police officer when he confronted Santos-Mendez. For two reasons, that

fact was not material to whether the affidavit established probable cause.

First, Officer Byars's signed affidavit *did* correctly note that Tealer was a police officer with the South Fulton Police Department. It also said that, at the time of the incident, Tealer was "not in uniform or a badge and not on duty." Tealer does not contest either of these facts. This information allowed the magistrate judge to decide whether, as Tealer suggests, Tealer should have been considered to be "on duty" 24 hours a day and therefore legally authorized to act as he did. And that was the issue that mattered.

Second, even if the magistrate judge knew that Tealer identified himself as a police officer to Santos-Mendez, that fact would not have eliminated probable cause under these circumstances. At best, Tealer enjoyed legal authority to arrest Santos-Mendez only if Santos-Mendez committed an offense in his presence.[5] *Taylor v. Waldo*, 709 S.E.2d 278, 281 (Ga. Ct. App. 2011) (citing Ga. Code § 17-4-20). But under the circumstances here, a reasonable officer

---

[5] As an officer of the South Fulton Police Department, Tealer appears to have been further limited by Georgia Code § 40-13-30. That Georgia provision states that "officers of an incorporated municipality [like Fulton County] shall have no power to make arrests beyond the corporate limits of such municipality unless such jurisdiction is given by local or other law."

could conclude that Tealer detained, battered, and threatened Santos-Mendez even though no offense occurred in Tealer's presence.[6]

We also reject Tealer's argument that *Carter v. Butts County, Georgia*, 821 F.3d 1310 (11th Cir. 2016), required the district court to deny qualified immunity here. In *Carter*, the defendant police officer's home was foreclosed upon. *Id.* at 1314. The defendant officer received notices of impending foreclosure and subsequent sale, and he knew the new owner would be sending agents to the home to clean it and prepare it for sale. *Id.* at 1321–23. Despite this knowledge, the defendant officer arrived at the house and ordered the arrests of the plaintiff individuals who were preparing the house for sale, falsely claiming that they had committed a burglary, criminal trespass, and theft. *Id.* at 1314–18. The plaintiffs brought claims against the defendant officer for false arrest under § 1983. *Id.* at 1322. We rejected the officer's defense of qualified immunity, finding that the officer "knew that [the property manager] was authorized to enter and clean out the Property" and he had "enough information to know that [they] were not engaged in burglary, criminal trespass, or theft." *Id.* at 1321.

---

[6] Tealer argues in the alternative that the Officers should have known that they lacked probable cause to arrest Tealer because he effectuated a lawful citizen's arrest of Santos-Mendez. But Tealer never raised this argument to the district court, so we will not consider it on appeal. *See Albra Advan, Inc.*, 490 F.3d at 828 n.1. And even if we were to consider this argument, it would fail because the contention that Tealer made a citizen's arrest is an affirmative defense, the validity of which the Officers would not be responsible for determining before applying for the arrest warrant.

*Carter* does not suggest—much less clearly establish—that Officer Byars violated the Fourth Amendment. The officer in *Carter* knew that he arrested the plaintiffs on false pretenses because he had direct knowledge that they were permitted by law in his former home. *Id.* at 1320. Here, in contrast, Officer Byars had no direct knowledge of what occurred at Donna's house. And in any case, Officer Byars applied for an arrest warrant for false imprisonment because Tealer admitted he intentionally and forcibly detained Santos-Mendez, while pointing a pistol at him. Unlike in *Carter*, no facts suggest that Officer Byars arrested Tealer, knowing that he did not commit a crime. So *Carter* does not help Tealer.

(3)

Finally, Tealer contends that the alleged fact that he had reason to believe that Santos-Mendez committed criminal trespass by ignoring Donna Tealer's demands that Santos-Mendez vacate her property was both material and omitted from the affidavit. But the problem with this alleged omission is that the facts, even as Tealer alleges them, don't support it.

Rather, based on the Amended Complaint, Santos-Mendez could not comply with Donna's demand to vacate the property because of Tealer's actions. For instance, when Tealer arrived, he immediately pointed a firearm at Santos-Mendez and repeatedly ordered him to get off the roof and get on the ground. Then, Tealer forcibly detained Santos-Mendez on the ground even after Mr. Scott identified him as his employee. So by the Amended

Complaint's own allegations, Tealer himself forced Santos-Mendez to stay on the property.

In short, none of the alleged omissions or misrepresentations undermined probable cause.

### b. Officer Byars did not violate the Fourth Amendment by obtaining an arrest warrant from a magistrate judge.

Next, Tealer argues that Officer Byars violated his Fourth Amendment rights by presenting the warrant affidavit to a magistrate judge. In support of this argument, Tealer relies on Georgia Code § 17-4-40(c). That law effectively precludes magistrate judges from issuing arrest warrants for law-enforcement officers for offenses they commit "while in the performance of [their] duties":

> Any warrant for the arrest of a *peace officer, law enforcement officer*, DFCS case manager, teacher, or school administrator for any offense alleged to have been committed *while in the performance of his or her duties* may be issued only by a judge of a superior court, a judge of a state court, or a judge of a probate court.

Ga. Code § 17-4-40(c) (emphasis added). Based on this law, Tealer urges that the magistrate judge acted without jurisdiction when he issued the arrest warrant because Tealer detained Santos-Mendez while he was "in the performance of his . . . duties" as a police officer.

We disagree.  For starters, the law applies only when an officer is "in the performance of his . . . duties."  Ga. Code § 17-4-40(c).  But for reasons we've already explained, Officer Byars could reasonably conclude that Tealer was not performing his duties as a police officer when he engaged in the acts that led to Officer Byars's decision to obtain an arrest warrant for him.

And even if we assume that Officer Byars violated Section 17-4-40(c), Tealer's argument still fails.  In his Amended Complaint, Tealer never alleges a Fourth Amendment violation based on a failure to follow Georgia Code § 17-4-40(c).  Nor does Tealer's Amended Complaint assert that § 1983 provides him with remedial rights based on the Officers' alleged violation of Section 17-4-40(c).

To be sure, paragraph 28 of the Amended Complaint—which is contained in Count I (the § 1983 malicious-prosecution claim)—alleges that "[e]ach Defendant specifically understood that the warrant could not be presented to a Magistrate Judge."  But the Amended Complaint never connects the dots, explaining how this allegation amounts to a Fourth Amendment violation.  Nor does the Amended Complaint even reference Section 17-4-40(c) in Count I.  Instead, the Amended Complaint cites Section 17-4-40(c) for the first (and only) time in Count III, a claim premised entirely on an alleged violation of Georgia law.  Put another way, Count III does not reference § 1983 or any alleged Fourth Amendment violation whatsoever; it is based on only state law.

In fact, the first time Tealer asserted that the Officers violated the Fourth Amendment by failing to comply with Section 17-

4-40(c) was in his response to the motion to dismiss. But a plaintiff can't raise a new claim in briefing that he failed to allege in his complaint. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) (applying this rule in the summary-judgment context).

In sum, as the district court concluded, Officer Byars is entitled to qualified immunity.

3.    Claims against Assistant Chief Catlin and Officer Danner

Although Officer Byars applied for the arrest warrant, Tealer argues that Assistant Chief Catlin is liable as Officer Byars's supervisor, and that both Assistant Chief Catlin and Officer Danner are liable for failing to intervene. None of these claims can prevail because they are all depend on Officer Byars's having committed a clearly established Fourth Amendment violation. *See Paez*, 915 F.3d at 1291 (because officers committed no constitutional violations, their supervisors could not be found liable for violating Section 1983); *Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."); *Williams v. Radford*, 64 F.4th 1185, 1199 (11th Cir. 2023) ("Of course, a failure-to-intervene claim requires an underlying constitutional violation."). But as we've explained, Tealer did not show that Officer Byars engaged in a clearly established Fourth Amendment violation.

So as the district court correctly held, Assistant Chief Catlin and Officer Danner are also entitled to qualified immunity.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the district court's order dismissing Tealer's Amended Complaint.

**AFFIRMED**.