[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 24-11395

Non-Argument Calendar

————————————————

HEATHER SANTIAGO,

Plaintiff-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

Defendants,

SHAWN SWAIN,
Officer,
JIM GODWIN,
Officer,

2                    Opinion of the Court                    24-11395

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:21-cv-00886-MMH-MCR

_____

Before JILL PRYOR, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

While Heather Santiago was visiting an inmate at a Florida prison, corrections officers found a controlled substance in the trunk of her car. A sheriff's deputy then arrested her for possessing a synthetic narcotic with intent to sell, manufacture, or deliver, as well as introducing a controlled substance onto the grounds of a state prison. After Santiago completed a pre-trial intervention program, the State dismissed the charges against her. She then filed this action against Phillip Sellers, the deputy who arrested her, bringing claims for false arrest and malicious prosecution under 42 U.S.C. § 1983. The district court granted summary judgment to Sellers. After careful consideration, we affirm.

## I.

Santiago traveled to a Florida state prison to visit inmate Michael Otero.[1] On previous occasions when she visited Otero, Santiago had driven to the prison with other adults. But, on this occasion, she made the trip with her eleven-year-old daughter. They arrived at the prison around 8 a.m. and visited Otero.

That day, Jim Godwin, a corrections officer assigned to the prison's contraband intelligence unit, was working with a drug-sniffing dog. When Godwin walked through the prison parking lot with the dog, the dog alerted to the trunk area of Santiago's vehicle.

Godwin and Shawn Swain, another corrections officer, approached Santiago and her daughter in the prison's visiting area and took them to another room. They told Santiago that the dog had alerted to her car and then asked for her consent to search it. Santiago refused. One of the corrections officers told Santiago that her refusal made no difference because, given the dog's alert, they could obtain a warrant to search the vehicle. But Santiago still refused to consent to the search. Even though Santiago had not agreed to a search, one of the corrections officers snatched her keys, which were sitting on a table, and stated that the officers were going to search the vehicle. Santiago and her daughter followed the corrections officers to the parking lot.

---

[1] Because the district court granted summary judgment against Santiago, we consider the record in the light most favorable to her. *See Copeland v. Dep't of Corr.*, 97 F.4th 766, 770 n.1 (11th Cir. 2024).

Godwin and Swain began searching Santiago's car. She watched from a distance while they performed the search. Inside the trunk, Godwin found a small change purse. Inside the change purse, he discovered condoms, feminine hygiene products, and two cylindrical packages wrapped in electrical tape. From his training and experience, Godwin knew it was common for people to (1) conceal narcotics in this type of packaging and (2) use condoms to insert narcotics into body cavities to smuggle them into prison.

Given his suspicions, Godwin cut into the electrical tape to see what was inside the packages. He found a green, leafy substance inside the packages. Based on his training and experience, Godwin believed it was synthetic marijuana, a controlled substance. In the trunk, Godwin also found several money order receipts and notebooks listing various names and amounts of money; some of the names were associated with inmates. He then called the Union County Sheriff's Office for assistance.

Sellers, a deputy from the sheriff's office, responded to the call. When he arrived at the prison, he spoke with Godwin about what had occurred. Godwin explained that the dog had alerted to Santiago's vehicle and that, with Santiago's consent, he searched the vehicle. He showed Sellers the change purse with the cylindrical packages, condoms, and feminine hygiene products. Based on his training and experience, Sellers identified the substance inside the packages as synthetic marijuana.

Sellers then approached Santiago. He advised her of her *Miranda*[2] rights. She agreed to speak to him without an attorney present. Sellers handed Santiago a consent form regarding the search of her car. She responded that the corrections officers had already conducted a search but nevertheless signed the form.

Sellers told Santiago that they had found a change purse inside the trunk and that there were drugs inside the change purse. Santiago responded that the change purse did not belong to her and that she did not even know it was in the trunk. But she admitted that all the other items in the trunk belonged to her. She told Sellers that the change purse may have been planted by someone else.[3] She also suggested that the change purse may have been left behind by a passenger from a previous trip to the prison. Sellers placed Santiago under arrest for possessing a synthetic narcotic with intent to sell, manufacture, or deliver and introducing a controlled substance onto the grounds of a state prison.

A few months later, the state attorney's office filed an information charging Santiago with the same crimes. In the criminal case, Santiago entered into a pre-trial intervention agreement.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Around this time, Otero was in a relationship with Ayla Jones, who previously had worked as a corrections officer at the prison. Although Jones was no longer working at the prison, Santiago suggests that Jones or one of her associates may have planted the contraband. But Santiago admits that she did not say anything to Sellers about Jones.

6                    Opinion of the Court                    24-11395

After she completed community service and fulfilled other conditions, the state attorney's office dismissed the charges against her.[4]

Santiago sued Sellers under 42 U.S.C. § 1983, bringing claims for false arrest and malicious prosecution.[5] After discovery, Sellers moved for summary judgment, asserting that he was entitled to qualified immunity.

The district court granted Sellers's summary judgment motion. It concluded that he was entitled to qualified immunity because there was arguable probable cause for Santiago's arrest. Santiago filed a motion for reconsideration, which the district court denied. This is Santiago's appeal.

_____

[4] While the criminal case was pending, the state attorney's office disclosed that an audit by an inspector general had uncovered irregularities related to the use of drug-detection dogs by the Department of Corrections. As it turns out, the Department's dog handlers were not certified law enforcement officers under Florida law; they received different training than law enforcement officers regarding interrogations, evidence handling, and search and seizure; and the training, qualifications, and recordkeeping related to the Department's dogs and their handlers were inconsistent with the standards that applied to law enforcement dogs and their handlers.

[5] Santiago also brought § 1983 claims against Swain and Godwin. She alleged that they unlawfully seized her during the prison visit and unlawfully searched her vehicle. She also brought § 1983 claims against Mark Inch, alleging that he failed to train and supervise corrections officers. The district court dismissed the claims against Inch, concluding that Santiago failed to state a claim for relief. After Santiago reached a settlement with Godwin and Swain, the district court dismissed with prejudice the claims against them. Because the claims against Godwin, Swain, and Inch are not at issue in this appeal, we discuss them no further.

## II.

We review *de novo* the district court's order granting summary judgment based on qualified immunity. *See Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). At the summary judgment stage, we view all evidence in the light most favorable to the non-moving party. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). We must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

On appeal, Santiago argues that the district court erred in granting summary judgment to Sellers on her false arrest and malicious prosecution claims. We address each claim in turn.

## A.

We begin by considering whether Sellers enjoyed qualified immunity on Santiago's false arrest claim. "Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020) (internal quotation marks omitted).

"To determine whether qualified immunity applies, we engage in a burden-shifting analysis." *Brooks v. Miller*, 78 F.4th 1267, 1280 (11th Cir. 2023). The defendant must first show that "he acted within his discretionary authority." *Williams*, 965 F.3d at 1156

(internal quotation marks omitted). When, as here, the defendant makes that showing, at the second step, the burden shifts to the plaintiff to prove that qualified immunity does not apply. *Id.* at 1156–57. She must "prove that the defendant violated a constitutional right that was clearly established when the violation allegedly occurred." *Id.* at 1168 (internal quotation marks omitted). "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks omitted).

"An officer violates a person's Fourth Amendment right against unreasonable seizures if the officer arrests that person without probable cause[.]" *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023). Probable cause is established "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (internal quotation marks omitted). Probable cause "is not a high bar"; it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 583 U.S. at 57 (internal quotation marks omitted). It "does not require anything close to conclusive proof or proof beyond a reasonable doubt that a crime was in fact committed, or even a finding made by a preponderance of the evidence." *Paez*, 915 F.3d at 1286. "So long as it is reasonable to conclude from the body of evidence as a whole that a crime was

committed, the presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause." *Id.*

"[T]o establish the defense of qualified immunity for a false arrest claim, we have held that an officer need not have actual probable cause, but only arguable probable cause." *Garcia*, 75 F.4th at 1186 (internal quotation marks omitted). "An officer has arguable probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *Id.* at 1186 (quoting *Wesby*, 583 U.S. at 68). Moreover, "[u]nder the any-crime rule an officer is insulated" from a false arrest claim "so long as probable cause existed to arrest the suspect for some crime." *Id.* (alteration adopted) (internal quotation marks omitted).

Here, we consider whether Sellers had arguable probable cause to arrest Santiago for a crime. Florida law makes it a crime to "sell, manufacture, or deliver, or possess with intent to sell" synthetic marijuana. Fla. Stat. § 893.13(1)(a); *see id.* § 893.03(1)(c)(190). It also makes it "unlawful to introduce into or upon the grounds of any state correctional institution . . . contraband." *Id.* § 944.47(1)(a). Contraband is defined to include "[a]ny controlled substance . . . or any prescription or nonprescription drug having a hypnotic, stimulating, or depressing effect." *Id.* § 944.47(1)(a)(4). Florida law prohibits both the "actual" and "constructive" possession of a controlled substance. *Evans v. State*, 32 So. 3d 188, 189 (Fla. Dist. Ct. App. 2010) (internal quotation marks omitted). Constructive possession occurs when a person "does not have physical possession

of the contraband but knows of its presence on or about the premises and can maintain dominion and control over it." *Id.*

Viewing the evidence in a light most favorable to Santiago, we conclude that Sellers had arguable probable cause to arrest her based on evidence that she possessed the controlled substance found in the trunk of her vehicle. When Sellers arrived at the prison, he met with Godwin who told him that the dog had alerted to the presence of drugs in Santiago's vehicle. Godwin also reported that Santiago consented to a search of her vehicle.[6] He then told Sellers about searching the trunk and discovering the two cylindrical packages wrapped in electrical tape alongside condoms and feminine hygiene products. Sellers also heard how Godwin found in the trunk money order receipts and notebooks that appeared to contain ledgers. Godwin described cutting into the cylindrical packages and showed Sellers what he found. Upon observing the substance inside the packages, Sellers determined, based upon his training and experience, that it was synthetic marijuana.[7] Given this evidence, a reasonable officer could have concluded there was

---

[6] Although Santiago disputes consenting to the search, she does not dispute that Godwin told Sellers that she had consented to the search.

[7] Santiago suggests that Sellers's investigation was inadequate because he should have investigated whether someone at the prison planted the drugs in her vehicle given that Jones was forced to resign for having an inappropriate relationship with Otero, the inmate Santiago was visiting. But because Santiago admitted that she did not say anything to Sellers about Jones, we cannot say that a reasonable jury could find his investigation inadequate.

"a probability or substantial chance" that Santiago had committed a crime. *Wesby*, 583 U.S. at 57 (internal quotation marks omitted).

Santiago asserts that Sellers lacked arguable probable cause to arrest her because there was insufficient evidence to allow a reasonable officer to conclude that (1) she possessed the cylindrical packages found in the change purse and (2) the packages contained a controlled substance. We disagree.

We conclude that a reasonable officer could have determined there was probable cause to believe that Santiago possessed the cylindrical packages. It is true that when Sellers interviewed Santiago, she denied that the change purse belonged to her. But she admitted that the other items found in the trunk near the change purse belonged to her. The fact that Santiago's property was found alongside the change purse reasonably supports an inference that the change purse belonged to her. *See Jackson v. State*, 995 So. 2d 535, 540 (Fla. Dist. Ct. App. 2008).

Santiago says that no reasonable officer could have concluded that she possessed the change purse because any such conclusion was based on an "uncorroborated" report from Godwin. Appellant's Br. 25. But a reasonable officer could have relied on the information that Godwin relayed.[8] After all, there is no

---

[8] Santiago argues that we should not allow the knowledge of Godwin, a corrections officer, to be imputed to Sellers, a law enforcement officer. Under the "fellow officer rule," courts "have allowed the collective knowledge of the investigating officers to be imputed to each participating officer." *Terrell v. Smith*,

requirement that an officer must personally observe criminal conduct to develop probable cause for an arrest. Instead, it is well-established that an officer may rely on a report from a witness or a victim so long as the report is sufficiently reliable. *See Knight v. Jacobson*, 300 F.3d 1272, 1275 (11th Cir. 2002) (concluding that officer had probable cause to arrest defendant for assault after hearing victim's report); *Case v. Eslinger*, 555 F.3d 1317, 1328 (11th Cir. 2009) (considering statements from witnesses when deciding whether there was probable cause for arrest of defendant and seizure of his property).

To support her argument that the information Godwin relayed did not establish arguable probable cause, Santiago cites a case holding that an anonymous tip to law enforcement that a young Black man standing at a bus stop and wearing a plaid shirt was carrying a gun was not sufficiently reliable to support reasonable suspicion to stop a suspect. *See Florida v. J.L.*, 529 U.S. 266, 268 (2000). Unlike *J.L.*, this case does not involve an unknown informant reporting criminal conduct but otherwise providing only innocent details of identification that were neither incriminating nor indicative of criminal behavior. *Id.* at 270–71. Here, the witness who

---

668 F.3d 1244, 1252 (11th Cir. 2012). This rule applies a legal fiction that allows one law enforcement officer to develop probable cause based on another officer's observations, even if the first officer never communicated with the second. *Id.* We need not decide whether the fellow officer rule allows a court to impute a correctional officer's knowledge to a law enforcement officer because here we are relying solely on information that Godwin communicated to Sellers.

reported observing criminal conduct—Godwin—was not an anonymous tipper. Instead, he met with Sellers in person and described in detail the particulars of what he had observed. And other evidence corroborated Godwin's report. When Sellers viewed the substance inside the cylindrical packages, he determined for himself that it was synthetic marijuana. And when Sellers interviewed Santiago, she confirmed that the vehicle and the other items in the trunk belonged to her. We thus reject Santiago's argument that the information Godwin reported was uncorroborated and too unreliable to be considered.

We also conclude that a reasonable officer could have determined that the material found inside the cylindrical packages was a controlled substance. At the time of Santiago's arrest, no chemical testing had been performed to verify that the cylindrical packages contained a controlled substance. But given the drug dog's alert to the trunk as well as Sellers's determination, based on his training and experience, that the material inside the packages appeared to be a controlled substance, a reasonable officer could have concluded there was a "probability or substantial chance" that the packages contained a controlled substance. *Wesby*, 583 U.S. at 57 (internal quotation marks omitted).[9]

---

[9] To bolster her position, Santiago cites to a Florida Supreme Court case holding that to prove a defendant guilty of trafficking a specified amount of cocaine, the State must introduce evidence of chemical tests establishing that each package at issue contained cocaine. *See Greenwade v. State*, 124 So. 3d 215, 229 (Fla. 2013). We fail to see how *Greenwade* helps Santiago. Nothing in

14                    Opinion of the Court                    24-11395

Santiago acknowledges that Sellers looked at the contents of the packages and determined, based on his training and experience, that they contained a controlled substance. But she argues that his opinion is not enough to create arguable probable cause because he failed to include in his report details about the "training and experience" that led him to determine that the packages contained a controlled substance or describe in the report the "smell, . . . color, [or] texture" of the material inside the packages. Reply Br. 15. Certainly, Santiago could have relied on these arguments at a criminal trial to attack Sellers's credibility and argue that his testimony did not establish beyond a reasonable doubt that the packages contained a controlled substance. But there was sufficient evidence here to allow a reasonable officer to conclude there was probable cause to believe that the packages contained a controlled substance. *See Paez*, 915 F.3d at 1286 (explaining that the "presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause").

Santiago also argues that the district court should have denied summary judgment because there was a disputed issue of fact about the contents of the packages. In his report, Godwin described the material inside the cylindrical packages as a leafy green substance. Santiago says that this description conflicts with a photograph, which Sellers included in his motion for summary judgment

---

*Greenwade* suggests that an officer lacks *arguable probable cause* to arrest a suspect for a controlled substance simply because the substance has not yet been chemically tested.

but never submitted as evidence, showing that the packages contained a white powdery substance. Even assuming that the photograph is part of the record before us and a reasonable juror could conclude that the photograph depicts a white powdery substance, we cannot say that this dispute is one of "material fact." Fed. R. Civ. P. 56(a). Sellers wrote in his police report that after viewing the material inside the cylindrical packages he determined that it was a controlled substance. Given this evidence, a reasonable officer could have concluded that there was probable cause to believe that the packages contained a controlled substance.

After carefully reviewing the record, we conclude that Sellers had arguable probable cause to arrest Santiago for a crime. Given this determination, he is entitled to qualified immunity on the false arrest claim.

**B.**

We now turn to Santiago's malicious prosecution claim. To prevail on a Fourth Amendment malicious prosecution claim, the plaintiff must prove that (1) "the defendant violated [her] Fourth Amendment right to be free from *seizures pursuant to legal process*" and (2) "the criminal proceedings against [her] terminated in [her] favor." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (emphasis added).

A malicious prosecution claim must be premised on a seizure pursuant to legal process, such as a "warrant-based" arrest or a seizure "following an arraignment, indictment, or probable-cause hearing." *Williams*, 965 F.3d at 1158. Here, the record reflects that

the state attorney's office filed an information charging Santiago with crimes. But there is no evidence in the record that Santiago was seized *after* the information was filed. Instead, the only evidence of a seizure in the record is Santiago's initial warrantless arrest. And because that seizure was made without legal process, it does not support a malicious prosecution claim.[10] *See id.* at 1157–58.

## IV.

For the above reasons, we affirm the district court's judgment.

**AFFIRMED.**

---

[10] On appeal, Santiago also challenges the district court's denial of her motion seeking reconsideration of the summary judgment order. After considering Santiago's arguments regarding reconsideration, we conclude that the district court did not abuse its discretion when it denied the motion for reconsideration. *See J.C. Penney Corp. v. Oxford Mall, LLC,* 100 F.4th 1340, 1349 (11th Cir. 2024).